# Illinois Official Reports

## Appellate Court

---

*People v. Anderson*, 2018 IL App (4th) 160037

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TYYUAN ANDERSON, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-16-0037 |
| Filed<br>Rehearing denied | May 30, 2018<br>June 19, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Macon County, No. 15-CF-764; the Hon. Jeffrey S. Geisler, Judge, presiding. |
| Judgment | Affirmed in part and vacated in part; cause remanded with directions. |
| Counsel on Appeal | Michael J. Pelletier, Patricia Mysza, and Eric E. Castaneda, of State Appellate Defender's Office, of Chicago, for appellant.<br><br>Jay Scott, State's Attorney, of Decatur (Patrick Delfino, David J. Robinson, and Allison Paige Brooks, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People |
| Panel | PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.<br>Justices Steigmann and DeArmond concurred in the judgment and opinion. |

**OPINION**

¶ 1        Defendant, Tyyuan Anderson, appeals from his convictions of armed violence, unlawful possession of a weapon by a felon, and unlawful possession of a controlled substance with intent to deliver. In his direct appeal, defendant challenges the sufficiency of the State's evidence, the comments of the prosecutor during closing argument, the constitutionality of his sentence, whether there was a violation of the one-act, one-crime doctrine, and the imposition of fines and associated credits. We affirm defendant's convictions and sentence but vacate the improperly imposed fine and remand for the trial court to amend the sentencing judgment and impose the fine authorized by statute with the application of the appropriate *per diem* credit.

¶ 2                                              I. BACKGROUND

¶ 3        On July 1, 2015, the State charged defendant with (1) armed violence (720 ILCS 5/33A-2(a), 33A-3(a) (West 2014)) (count I), a Class X felony, for knowingly possessing cocaine (720 ILCS 570/402 (West 2014)) while armed with a handgun; (2) unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2014)) (count II), a Class 3 felony, for knowingly possessing a firearm after having been convicted of possession of a stolen motor vehicle in Macon County case No. 14-CF-783; (3) unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(c)(2) (West 2014)) (count III), a Class 1 felony, for knowingly possessing with the intent to deliver between 1 and 15 grams of cocaine; (4) unlawful possession of a controlled substance (720 ILCS 570/402(c) (West 2014)) (count IV), a Class 4 felony, for knowingly possessing less than 15 grams of cocaine; (5) unlawful possession of cannabis with intent to deliver (720 ILCS 550/5(b) (West 2014)) (count V), a Class A misdemeanor, for knowingly and unlawfully possessing with the intent to deliver between 2.5 and 10 grams of cannabis; and (6) unlawful possession of cannabis (720 ILCS 550/4(b) (West 2014)) (count VI), a Class B misdemeanor, for knowingly and unlawfully possessing between 2.5 and 10 grams of cannabis.

¶ 4        The charges against defendant stem from a June 24, 2015, encounter between detectives from the Decatur Police Department's street-crimes unit and three males, one of whom was defendant. The three males were walking in the middle of a street at approximately 11:30 p.m. According to the officers' sworn statements, one officer asked defendant to come toward him. Rather than comply with the officer's request, defendant fled on foot in the opposite direction. Both officers gave chase and were able to take defendant into custody after he fell over a brush pile in a nearby residential backyard. Officers found a black Glock 27 handgun lying approximately two to three feet in front of defendant. In defendant's right pocket, officers found seven bags of cannabis and a separate bag containing nine individually packaged bags of suspected crack cocaine. At the time of his arrest, defendant was on probation for a stolen-vehicle conviction (Macon County case No. 14-CF-783).

¶ 5        Defendant's jury trial began on November 10, 2015. Detective Scott Rosenberry testified he and Detective James Callaway were on a "proactive enforcement operation" at approximately 11:30 p.m. on June 24, 2015, in cooperation with other Decatur police officers focusing on high-crime areas within the city. The detectives were dressed in plain clothes and black tactical vests with "police" written on the front and back. They were in a white unmarked Chevrolet Impala equipped with interior red and blue lights, a siren, and a driver-side mounted spotlight. As they traveled westbound in the 400 block of West Leafland Avenue, they

observed three males walking in the roadway. Rosenberry used his spotlight to "light up the area," and the officers got out of the vehicle to approach the subjects. Rosenberry called to one of the subjects, later identified as defendant, to come to him. Defendant, who was wearing shorts and a hooded sweatshirt with the hood up and pulled tightly to reveal only the front portion of his face, fled on foot. Rosenberry said he yelled, " 'Police. Stop,' " but defendant disregarded his commands and continued to run. Defendant ran through the backyards of nearby houses but fell over a large brush pile and ended up on his stomach. Rosenberry said he noticed defendant kept his hands "tucked inside towards the front of his waistband near his stomach" as he ran. Rosenberry put defendant's arms behind his back as defendant lay on the ground until Callaway arrived and secured defendant in handcuffs. Upon illuminating the area with a flashlight, the officers saw a Glock 27 handgun with a 15-round magazine lying two to three feet in front of defendant. The gun was secured and later sent to the Illinois State Police (ISP) crime lab for fingerprint testing.

¶ 6       Rosenberry said the officers conducted a search incident to defendant's arrest and found a clear plastic Baggie in the pocket of defendant's shorts containing seven individually wrapped packages of a substance, which was field-tested positive for cannabis, and a separate knotted Baggie with nine individually packaged, field-tested-positive rocks of crack cocaine. The State introduced as exhibits photographs of the contraband and the contraband itself.

¶ 7       On cross-examination, Rosenberry testified the foot pursuit of defendant lasted no more than 20 seconds before he fell. He said defendant was wearing "basketball shorts," which, as far as he could remember, were not secured with a belt. Rosenberry did not see defendant holding a gun nor did he see defendant throw or drop a gun. Rosenberry said he was "still securing" defendant while Callaway searched him. Rosenberry saw Callaway take the drugs and a cellular telephone from defendant's pocket. Rosenberry identified the handgun during his testimony and testified it appeared the gun had dirt in the "checkering on the grip." The Baggie, containing all of the drugs found, was knotted at the top and tied shut. Inside the bag were seven individual knotted Baggies containing cannabis. An eighth bag was knotted closed and contained nine individual Baggie corners with a rock of crack cocaine in each.

¶ 8       Decatur police officer Steve Hagemeyer testified he was on patrol that evening and responded to the scene after the detectives' call for assistance. When he approached the backyard where defendant had been apprehended, he shown his flashlight around the area and saw a Glock semiautomatic handgun lying two to three feet from defendant. On cross-examination, Hagemeyer testified he did not know how the gun came to be in that location nor did he see defendant with the gun at any time.

¶ 9       Detective James Callaway testified, corroborating much of Rosenberry's testimony. He said they attempted to make contact with defendant and the two other males because they were "improperly walking in the roadway." He said when Rosenberry asked defendant to approach them, both officers were out of the vehicle and the word "Police" on their vests would have been visible. Callaway testified consistently with Rosenberry's testimony regarding the foot pursuit, apprehension of defendant, discovery of the gun, and search of defendant's pockets yielding the drugs.

¶ 10      Callaway spoke with defendant after his arrest. Defendant told Callaway he ran from them because he "thought someone was after him." He said "he guessed" he realized it was the police during the pursuit. Callaway identified the gun and the bags of drugs as those recovered at the scene.

¶ 11 On cross-examination, Callaway testified he secured a search warrant for the cellular phone found in defendant's pocket in an attempt to find information on the gun or drugs. Callaway did not find any incriminating photographs or text messages. On the night of the incident, Callaway did not see defendant with the gun, and defendant denied carrying it. However, in Callaway's opinion, defendant dropped the gun when he fell. The gun was tested for latent fingerprints but not deoxyribonucleic acid (commonly known as DNA). According to Callaway, defendant told him he ran because he thought "someone was trying to get him" because "of everything going on." Callaway confirmed there had been recent shootings in the area. When Callaway informed defendant he would be charged with armed violence, defendant stated he had not harmed anyone. Defendant said he knew nothing about a gun.

¶ 12 Kristin Stiefvater, a drug chemist with the ISP crime lab, testified she weighed the substance believed to be crack cocaine and then performed a color test and mass spectrometry. The total weight of the nine separate plastic bags was 0.7 grams and the contents tested positive for cocaine.

¶ 13 Gary Havey, a forensic scientist also with the ISP crime lab, testified he tested the handgun for latent fingerprints and could conclude only that the handgun had been touched. He found "ridge detail" on the handgun but nothing suitable to either identify or exclude any person.

¶ 14 Decatur police officer David Dailey testified as the State's expert in the field of narcotics distribution and use. Dailey said the majority of cocaine in Decatur comes from the source cities of Chicago and Indianapolis, whereas the majority of cannabis comes from California and Colorado. He said the typical dosage unit for crack cocaine is 0.2 grams and 0.5 grams for cannabis. The street value for crack cocaine is $100 per gram and $10 per gram for cannabis. After Dailey's review of the investigative reports in this case, he said in his opinion, to a reasonable degree of certainty, the cocaine and cannabis were possessed with the intent to distribute. His opinion was based on the weight and packaging of each substance in addition to the absence of paraphernalia. He said without paraphernalia, defendant had no means to consume either drug. On cross-examination, Dailey testified the street value of the drugs found on defendant totaled $126.70, $70 of cocaine and $56.70 of cannabis.

¶ 15 At the close of the State's case, the trial court read two stipulations to the jury. First, the parties agreed defendant had been convicted of a prior felony on June 24, 2015. Second, Decatur police officer Troy Kretsinger, an expert in the field of cannabis identification, determined to a reasonable degree of scientific certainty that the substance weighing 5.6 grams was cannabis but, if called to testify, he would have no basis to form an opinion regarding defendant's intent for its use. The State rested.

¶ 16 Defendant moved for a directed verdict, arguing the State failed to present sufficient evidence for the jury to determine defendant possessed (1) the cannabis and cocaine with the intent to deliver, (2) the handgun, and (3) between 1 and 15 grams of cocaine to satisfy the Class 1 felony offense as charged in count III. The trial court denied defendant's motion, finding the State presented a *prima facie* case for counts I, II, IV, V, and VI, and indicated it would allow the State to instruct the jury as to count III on a lesser offense.

¶ 17 The State made an oral motion to amend count III to conform it with the evidence presented at trial. The State asked the information be amended to reflect that defendant allegedly possessed less than one gram of cocaine with the intent to deliver, changing the offense from a Class 1 felony to a Class 2 felony. The trial court granted the motion, allowing the State to amend count III by interlineation.

¶ 18    Defendant did not present any evidence. Prior to closing arguments, the trial court advised the jury of the following: "What the lawyers say to you during arguments is not evidence and should not be considered by you as evidence. The lawyers are permitted to draw conclusions and reasonable inferences from the evidence previously presented to you." During the State's closing argument, the prosecutor argued the concepts of "constructive possession" and "circumstantial evidence" as those terms related to the handgun. The prosecutor stated:

> "So to believe this defendant didn't possess the handgun, you would have to believe that it had just been lying loaded in this yard and just been left there. Is that reasonable? No. Do people leave loaded handguns laying in plain view in a yard? No—"

Defense counsel objected, claiming "[t]hat's not in evidence. We had no testimony as to whether or not how often this occurs or it doesn't occur." The trial court overruled the objection.

¶ 19    The jury found defendant guilty of armed violence (count I), unlawful possession of a weapon by a felon (count II), unlawful possession of a controlled substance with intent to deliver (count III), and unlawful possession of cannabis with intent to deliver (count V).

¶ 20    On December 11, 2015, defendant filed a motion for a new trial, alleging several trial errors, including some of those presented in this appeal. At a hearing on December 30, 2015, the trial court denied defendant's motion. The court then proceeded to sentencing. Neither party presented evidence other than the presentence investigation report (PSI). The State recommended 20 years in prison for the armed-violence conviction and concurrent 10-year terms on the other merged offenses. Defendant recommended 15 years in prison for the armed-violence conviction and concurrent 5-year terms on the other merged offenses. After considering the PSI, defendant's criminal history, his age, and arguments of counsel, the court sentenced defendant to 16 years for the armed-violence conviction (count I), two concurrent five-year terms for the unlawful possession of a weapon by a felon (count II) and the unlawful possession of a controlled substance with the intent to deliver (count III) convictions, and 60 days in jail for the unlawful possession of cannabis with the intent to deliver conviction (count V). The court ordered a $2,000 mandatory assessment on count III, a $100 lab fee, and a $126 street-value fine. The court awarded defendant $995 in *per diem* credit to be applied toward his fines.

¶ 21    This appeal followed.


## II. ANALYSIS
### A. Possession of the Handgun

¶ 24    Defendant first contends the State failed to prove him guilty of armed violence and unlawful possession of a weapon by a felon because it failed to prove beyond a reasonable doubt he possessed the handgun. The police officers testified they never saw defendant with the handgun nor did they see him throw or drop the weapon. They only saw the handgun lying on the ground two to three feet from defendant when the area was illuminated by a flashlight. Defendant claims this evidence was insufficient to support the possession element of the offenses. We disagree.

¶ 25    Initially, we note the parties disagree over the standard of review. Defendant claims no relevant facts are in dispute and therefore our review is *de novo*. See *People v. Smith*, 191 Ill.

2d 408, 411 (2000). On the other hand, the State contends questions of fact remain because factual inferences must be drawn from the evidence presented at trial. Because defendant is challenging the sufficiency of the evidence with regard to the elements required for his convictions, we agree with the State. *De novo* standard of review applies only when the facts are not in dispute and the defendant's guilt is a question of law. *Smith*, 191 Ill. 2d at 411.

> "When considering a challenge to the sufficiency of the evidence in a criminal case, our function is not to retry the defendant. [Citation.] Rather, our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. [Citation.] This means that we must allow all reasonable inferences from the record in favor of the prosecution. [Citation.] 'We will not reverse a conviction unless the evidence is so improbable, unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *People v. Lloyd*, 2013 IL 113510, ¶ 42 (quoting *People v. Collins*, 214 Ill. 2d 206, 217 (2005)).

¶ 26                                          1. *Armed Violence*

¶ 27        The State charged defendant with armed violence predicated on unlawful possession of a controlled substance while armed with a handgun, a Category I weapon (720 ILCS 5/33A-1(c)(2), 33A-2(a) (West 2014)). Our supreme court has emphasized the purpose of the armed-violence statute is to deter felons from using dangerous weapons, thereby minimizing the deadly consequences that may result when a felony victim resists. *People v. Condon*, 148 Ill. 2d 96, 109 (1992). That is, a defendant violates this statute by simply having possession of a firearm during the commission of another predicate felony. "Thus, for [the purpose of the statute] to be served, it would be necessary that the defendant have some type of *immediate access to* or *timely control over* the weapon." (Emphasis in original.) *Condon*, 148 Ill. 2d at 110. "A felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force. [Citation.] Without a weapon at hand, the felon is not faced with such a deadly decision." *Condon*, 148 Ill. 2d at 109-10. The question here is whether the weapon found a few feet from defendant qualifies as the available access to the gun that the legislature sought to avoid. We will discuss further below.

¶ 28                        2. *Unlawful Possession of a Weapon by a Felon*

¶ 29        The State also charged defendant with unlawful possession of a weapon by a felon. 720 ILCS 5/24-1.1(a) (West 2014). A defendant violates this statute if he "knowingly posses[es] on or about his person *** any firearm *** if the person has been convicted of a felony under the laws of this State or any other jurisdiction." 720 ILCS 5/24-1.1(a) (West 2014). Unlike the proof required for a conviction for armed violence, here, the State must prove beyond a reasonable doubt the defendant had a prior felony conviction. 720 ILCS 5/24-1.1(a) (West 2014). However, like the proof required for a conviction for armed violence, the State must prove beyond a reasonable doubt the defendant possessed the gun. This element may be satisfied with proof the defendant had constructive possession, *i.e.*, he knew of the gun and it was in his immediate and exclusive control. *People v. Hester*, 271 Ill. App. 3d 954, 961 (1995).

¶ 30                                3. *Constructive Possession*

¶ 31    Possession of contraband may be actual or constructive. *People v. Neylon*, 327 Ill. App. 3d 300, 306 (2002). "Actual possession is proved by testimony which shows that defendant has exercised some dominion over the [contraband]. [Citation.] The act of dominion may be that defendant had the [contraband] on his body, that he tried to conceal it, [or] that he was seen throwing it away." *People v. Howard*, 29 Ill. App. 3d 387, 389 (1975). However, mere proximity is not sufficient evidence to prove actual possession. *Howard*, 29 Ill. App. 3d at 389.

¶ 32    "Actual possession need not be demonstrated if constructive possession can be inferred." *Neylon*, 327 Ill. App. 3d at 306. To establish constructive possession, the State must prove beyond a reasonable doubt that defendant (1) knew the handgun was present and (2) exercised immediate and exclusive control over the area where the handgun was found. *People v. Sams*, 2013 IL App (1st) 121431, ¶ 10. Knowledge may be shown by evidence of defendant's acts, declarations, or conduct from which it can be inferred that he knew the handgun existed in the place where it was found. *People v. Spencer*, 2012 IL App (1st) 102094, ¶ 17. Control may be shown by evidence that defendant had the intent and capability to maintain control and dominion over the handgun, even if he lacked personal present dominion over it. *Spencer*, 2012 IL App (1st) 102094, ¶ 17. " ' 'Knowledge and possession are questions of fact to be resolved by the trier of fact, whose findings should not be disturbed upon review unless the evidence is so unbelievable, improbable, or palpably contrary to the verdict that it creates a reasonable doubt of guilt.' " *People v. Faulkner*, 2017 IL App (1st) 132884-B, ¶ 39 (quoting *People v. Luckett*, 273 Ill. App. 3d 1023, 1033 (1995)).

¶ 33    Viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found beyond a reasonable doubt defendant, a convicted felon, had knowledge of, and had immediate access to, the loaded handgun. Detective Rosenberry testified defendant's hands were "tucked inside towards the front of his waistband" as he fled from the police, and while he was still on the ground being secured, the gun was found two to three feet away. From this evidence, we find it was reasonable for the jury to believe defendant was armed with the handgun while he was being pursued by the police.

¶ 34    Defendant cites several cases in support of his argument. However, we find the evidence in this case is distinguishable from that presented in defendant's cited authority. For example, in *People v. Wright*, 2013 IL App (1st) 111803, ¶ 26, the appellate court reversed the defendant's conviction of aggravated unlawful use of a weapon because the State failed to sufficiently prove the defendant knowingly possessed the gun. This was so because the State was unable to prove beyond a reasonable doubt that the defendant "exercised exclusive or immediate control over the area where the weapon was found." *Wright*, 2013 IL App (1st) 111803, ¶ 26. There, the gun was found underneath the defendant's torso after he had fallen down stairs at the same time as another man. The defendant was one of five people in the immediate area of the basement of a residence that was not the defendant's. For these reasons, the State could not prove beyond a reasonable doubt that it was the defendant, as opposed to the others in the immediate area, who constructively possessed the gun. *Wright*, 2013 IL App (1st) 111803, ¶ 26. Contrary to the facts in *Wright*, in this case, it would be reasonable to describe defendant as having the exclusive or immediate control over the area where the weapon was found, as no others were present in the yard.

¶ 35    Also distinguishable are the facts set forth in the First District's decision in *Sams*. See *Sams*, 2013 IL App (1st) 121431, ¶ 13. There, the reviewing court found the State had failed to

prove the defendant constructively possessed the weapon found underneath a couch in a residence that was not the defendant's, but one that the defendant was seen exiting. The court noted the police officers' "testimony shows only that [the] defendant walked out of a house in which a gun was later found. Mere presence in the vicinity or access to the area in which contraband is found is insufficient to establish constructive possession." *Sams*, 2013 IL App (1st) 121431, ¶ 13. Again, the facts in this case, unlike the facts in *Sams*, indicate defendant had exclusive and immediate control of the area where the gun was found.

¶ 36 Our supreme court has " 'consistently held that a conviction may be based solely on circumstantial evidence.' *People v. Patterson*, 217 Ill. 2d 407, 435 (2005); [*People v.*] *Hall*, 194 Ill. 2d [305,] 330 *** [(2000)] ('Circumstantial evidence is sufficient to sustain a criminal conviction, provided that such evidence satisfies proof beyond a reasonable doubt of the elements of the crime charged')." *People v. Wheeler*, 226 Ill. 2d 92, 120 (2007). Based on the evidence presented at trial, a rational trier of fact could have reasonably concluded, at the time defendant was a convicted felon, he had knowledge of the firearm and exercised immediate and exclusive control over the area where it was found. The jury was entitled to infer defendant was indeed carrying the weapon on his person before he fell. In other words, it could find, beyond a reasonable doubt, defendant was armed for the purposes of the statute. Thus, we find the evidence was sufficient to support the conclusion defendant had possession of the handgun recovered at the time of his arrest.

¶ 37 B. Sufficiency of the Evidence of Armed Violence

¶ 38 Next, defendant argues, because he was not in possession of the handgun at the time of his arrest, he could not be considered "armed with a dangerous weapon" for the purposes of his armed-violence conviction. As such, the issue before us is whether defendant was "armed" as that term is defined in the armed-violence statute. "A person is considered armed with a dangerous weapon for purposes of this Article, when he or she carries on or about his or her person or is otherwise armed with a Category I, Category II, or Category III weapon." 720 ILCS 5/33A-1(c)(1) (West 2014). The supreme court has further refined the definition of " 'otherwise armed' " to mean having immediate access to or timely control over the weapon. *Condon*, 148 Ill. 2d at 110.

¶ 39 As briefly mentioned above, the purpose of the armed violence statute is to deter felons from using weapons during the commission of an offense. *Smith*, 191 Ill. 2d at 411-12 (citing *Condon*, 148 Ill. 2d at 109). Keeping dangerous weapons out of the hands of criminals minimizes the deadly consequences should circumstances go awry. *Smith*, 191 Ill. 2d at 412. The analysis of the sufficiency of the evidence for this conviction should consider whether the defendant had " ' "immediate access to" ' or ' "timely control over" ' a weapon" at the time he was confronted by the police. *Smith*, 191 Ill. 2d at 412 (quoting *Condon*, 148 Ill. 2d at 110).

¶ 40 In *Smith*, the supreme court concluded the defendant did *not* have the required access to or control over the weapon in question at the time the police entered the residence because the defendant had dropped the gun out of a window. *Smith*, 191 Ill. 2d at 412. The court found that allowing a conviction for armed violence to stand against this defendant "would not serve, but rather would frustrate, the statute's purpose of deterring criminals from involving themselves and others in potentially deadly situations." *Smith*, 191 Ill. 2d at 413.

¶ 41 Here, a reasonable jury could have found from the evidence defendant possessed the gun in question in that he was likely carrying the gun on his person during the police pursuit and then

either dropped it or discarded it when he fell. Regardless, defendant had "immediate access to or timely control over the weapon" while he committed the felony offense of unlawful possession of a controlled substance. (Emphasis omitted.) *Condon*, 148 Ill. 2d at 110. We find the facts of this case further the deterrence purpose of the armed-violence statute in that defendant had immediate access to this weapon and, as the legislature recognized, "a felon with immediate access to a weapon was predisposed to use it when confronted with resistance, either from victims, law enforcement representatives, or other criminals." *Neylon*, 327 Ill. App. 3d at 308. It was reasonable for the jury to conclude this loaded weapon was immediately accessible to defendant before and during defendant's arrest so that he was "otherwise armed," as that term is defined, during the commission of the predicate felony of unlawful possession of a controlled substance.

¶ 42                          C. Claim of Prosecutorial Misconduct

¶ 43    Defendant also contends the prosecutor improperly argued during closing argument that it was unreasonable to believe anything other than it was defendant's gun lying in the yard. Defendant points to two specific instances in the prosecutor's closing argument. First, the prosecutor stated: "So to believe this defendant didn't possess the handgun, you would have to believe that it had just been lying loaded in this yard and just been left there. Is that reasonable? No. Do people leave loaded handguns laying in plain view in a yard? No." Second, the prosecutor, during rebuttal, commented on defendant's silence during police questioning as evidence of his guilt. The prosecutor stated:

> "But remember the testimony of Detective Callaway, [defendant] didn't continually deny having the gun. When Detective Callaway first confronted him with the gun, he—he said nothing. He was silent. He asked him about it several times and there was no response. Then later in the interview, he begins to deny it. It's a different thing than the entire time saying, ['W]hat gun? I didn't have it.' "

¶ 44    Defendant claims, given the "highly contested" issue in this case of whether defendant possessed the gun, the prosecutor's comments greatly prejudiced him in light of the overall close evidence in the case. Defendant contends the State's entire case relied on inferences and circumstantial evidence and, thus, the prosecutor's improper comments in closing argument swayed the jury toward a guilty verdict and jeopardized his right to a fair trial.

¶ 45    The first contested comment was sufficiently preserved for appeal by counsel's objection at trial and the inclusion of the issue in his posttrial motion. See *People v. Piatkowski*, 225 Ill. 2d 551, 564 (2007). "[W]here the defendant has made a timely objection and properly preserved an error for review, the reviewing court conducts a harmless-error analysis in which the State has the burden of persuasion with respect to prejudice." *People v. McLaurin*, 235 Ill. 2d 478, 495 (2009).

¶ 46    Defendant failed to sufficiently preserve the issue related to the second comment by neither objecting during the trial nor including the issue in his posttrial motion. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). However, defendant asks this court to review the issue under the plain-error doctrine set forth in *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005) (to bypass forfeiture, a reviewing court may consider an unpreserved error if either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence). When applying plain error, the burden of persuasion remains with defendant. *Herron*, 215 Ill. 2d at 187.

¶ 47    "Whether statements made by a prosecutor at closing argument were so egregious that they warrant a new trial is a legal issue this court reviews *de novo*." *Wheeler*, 226 Ill. 2d at 121. Although the supreme court was clear about this standard of review in *Wheeler*, and we later adopted that standard in *People v. Wilson*, 2015 IL App (4th) 130512, ¶ 66, we point out this court has recently noted the existence of a conflict among other courts regarding the correct standard. See *People v. Trice*, 2017 IL App (4th) 150429, ¶ 61 (the First District in *People v. Anderson*, 2017 IL App (1st) 122640, spoke of a conflict between *Wheeler* and *People v. Hudson*, 157 Ill. 2d 401, 441 (1993), where the court suggested the issue should be reviewed for an abuse of discretion). Like we did in *Trice*, we need not take a position here on the proper standard of review because defendant's claim fails under either standard.

¶ 48    When reviewing a prosecutor's comments during closing argument, the reviewing court asks whether the comments engendered "substantial prejudice against a defendant such that it is impossible to say whether or not a verdict of guilt resulted from them." *Wheeler*, 226 Ill. 2d at 123. If a court of review cannot conclude "the prosecutor's improper remarks did not contribute to the defendant's conviction, a new trial should be granted." *Wheeler*, 226 Ill. 2d at 123. During closing argument, prosecutors are granted wide latitude. *Wheeler*, 226 Ill. 2d at 123. "Closing arguments are viewed in their entirety, and the challenged remarks are considered within the context in which they were conveyed." *People v. Lewis*, 2017 IL App (4th) 150124, ¶ 67.

¶ 49    As defendant observes, there was no physical evidence and no eyewitness testimony tying him to the handgun. In its prosecution, the State relied solely on inferences and circumstantial evidence. Defendant's defense at trial was that he denied having any knowledge of the gun. Thus, defendant claims, the prosecutor's improper remarks spoke directly to the determinative issue of whether defendant possessed a gun.

¶ 50                               1. *Prosecutor's First Comment*

¶ 51    Defendant contends the prosecutor improperly argued facts not in evidence when she urged the jurors to rely on their personal experiences about the reasonableness of someone leaving a loaded gun laying in plain view in a yard. As stated above, this issue was properly preserved for appeal, and thus, we must determine whether the trial court erred by overruling defendant's objection and allowing the prosecutor's comments to stand. If we find error, we then determine whether the error was harmless. See *McLaurin*, 235 Ill. 2d at 495.

¶ 52    While prosecutors should not make comments that could cause the jury to speculate about facts not in evidence (*People v. Howell*, 358 Ill. App. 3d 512, 527 (2005)), they are allowed to comment on the evidence and on any fair and reasonable inference the evidence may yield. *People v. Runge*, 234 Ill. 2d 68, 142 (2009). "It has been held that prosecutors may discuss subjects of common experience or common sense in closing argument as well. [Citation.] Indeed, since this court has acknowledged that jurors do not leave their common sense behind when they enter court [citation], it would seem proper for prosecutors to couch arguments in those terms and make appeals thereto." *Runge*, 234 Ill. 2d at 146. " 'Jurors do not leave their common sense behind when they enter court, and even in the absence of cautionary instructions they will ordinarily be aware of the factors which make some witnesses unreliable.' " *People v. Steidl*, 142 Ill. 2d 204, 238 (1991) (quoting *People v. Rollins*, 108 Ill. App. 3d 480, 488 (1982)).

¶ 53    We find defendant mischaracterizes the prosecutor's statement as an argument of facts not in evidence. By urging the jury to consider the unreasonableness of someone leaving a loaded weapon lying in plain view in a yard, the prosecutor was simply asking jurors to use their common sense and to conclude that such a scenario was improbable. Here, the prosecutor's comment was a permissible request to the jury to draw an inference from the evidence presented, not a misstatement of facts or an argument of facts not in evidence. On this issue, we find no error. Instead, we observe it was simply effective and permissible advocacy. As we stated in *People v. Dunlap*, 2011 IL App (4th) 100595, ¶ 28:

> "[F]elony criminal trials are serious matters with high stakes, and we expect advocates in our adversarial system of justice—both prosecutors and defense attorneys—to 'use all of their forensic skills to persuade the jury of the wisdom or justice of their respective positions.' "

¶ 54                          2. *Prosecutor's Second Comment*

¶ 55    We now address the prosecutor's comment about defendant's post-*Miranda* silence, doing so under the first step of a plain-error analysis. "The first step of plain-error review is determining whether any error occurred." *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 56    Generally, remarks by a prosecutor regarding a defendant's postarrest silence are improper when used to create an inference of guilt. *People v. Edwards*, 309 Ill. App. 3d 447, 454 (1999). However, such individual error may not require reversal. *Edwards*, 309 Ill. App. 3d at 455.

¶ 57    Here, defendant contends the prosecutor improperly commented on defendant's silence during his police interview, implying evidence of his guilt. The prosecutor stated:

> "But remember the testimony of Detective Callaway, [defendant] didn't continually deny having the gun. When Detective Callaway first confronted him with the gun, he—he said nothing. He was silent. He asked him about it several times and there was no response. Then later in the interview, he begins to deny it. It's a different thing than the entire time saying, ['W]hat gun? I didn't have it.' "

The prosecutor made this comment during her *rebuttal* closing argument. During the trial, the prosecutor asked Callaway if, during the interview, he had asked defendant "about the firearm that was located." Callaway said he had. The prosecutor asked if he had discussed with defendant the "potential charges *** given the location of the cocaine and the firearm." Callaway said he had and defendant responded he "didn't hurt anyone." On cross-examination, defense counsel asked Callaway if defendant denied carrying a gun. Callaway said yes.

¶ 58    On redirect examination, the following exchange occurred:

> "Q. When you asked—when you began to ask him about the gun, at some point in the interview he began to deny carrying a gun, correct?
> A. Yes.
> Q. When you first asked him about the gun, what was his response?
> A. He became silent and wouldn't respond.
> Q. And did you ask him several questions about the gun?
> A. Yes.
> Q. Did—would he respond at all to any of those questions?
> A. No."

¶ 59    On recross-examination, defense counsel attempted to clarify the issue with the following questions:

> "Q. And then now when you talk about him not answering questions about the gun, he never at any point said he had a gun, correct?
>
> A. That's correct.
>
> Q. In fact, the only answer he gave was he didn't know what you were talking about?
>
> A. Correct."

¶ 60    During defendant's closing argument, counsel argued defendant "continually throughout this interview denie[d] knowing anything about the gun. So it's not like he admitted to possessing it. There's nothing of that at all. He continually denie[d]." In response, at the beginning of her rebuttal argument, the prosecutor addressed counsel's statement that defendant "continually denied having the gun." The prosecutor attempted to clarify that defendant did not "*continually* deny having the gun." (Emphasis added.) The prosecutor wanted the jury to know that defendant initially said nothing, but later in the interview, he denied having the handgun.

¶ 61    Putting the contested comment in context, as we are required to do (*People v. Burgess*, 176 Ill. 2d 289, 319 (1997)), it appears the prosecutor was rebutting defense counsel's statement that defendant, during his police interview, "continually denied" knowing anything about the gun. According to the State, this was a mischaracterization of defendant's interview responses. During his cross-examination of Callaway, it was defense counsel who first broached the subject of whether defendant had said in the interview that he knew about the gun. The prosecutor never asked Callaway on direct examination about defendant's refusal to answer questions about the gun. Once defense counsel brought up the subject on cross-examination, the prosecutor clarified it on redirect and also disputed counsel's argument in her rebuttal closing argument. Although the prosecutor referenced defendant's post-*Miranda* silence, she did so to clarify or dispute defendant's representation to the jury on the same subject.

¶ 62    Our supreme court has held that otherwise improper argument by the State will not be considered error when the comments are based on reasonable inferences drawn from the evidence or invited by the closing argument of defense counsel. *People v. Kliner*, 185 Ill. 2d 81, 153 (1998). The jury was entitled to hear the prosecutor's version of the events, *i.e.*, that defendant did *not* actually continually deny knowing about the gun during the interview but, rather, he initially refused to answer such questions. Not answering the question and denying the question are two different responses, and the prosecutor was allowed to clarify that for the jury. We find no error, and thus, we honor defendant's procedural default. The issue is forfeited and is not subject to plain-error analysis.

¶ 63            D. As-Applied Constitutional Challenge to Armed-Violence Sentence

¶ 64    Defendant contends, for the first time on appeal, the statute mandating a minimum 15-year sentence on his armed-violence conviction (720 ILCS 5/33A-3(a) (West 2014)) violated both the Illinois and United States Constitutions as applied to him because the trial court was precluded from considering "the signature qualities of [defendant]'s youth in issuing his sentence." Defendant was arrested less than two weeks after he turned 18. He claims his 16-year sentence for armed violence, predicated on his possession of 0.7 grams of cocaine, was

disproportionate to the crime considering his age, lack of criminal history, and the fact the sentence frustrates the purpose of restoring him to useful citizenship. See Ill. Const. 1970, art. I, § 11.

¶ 65 Statutes are presumed constitutional, and a court must construe a statute so as to affirm its constitutionality if possible. *People v. Dinelli*, 217 Ill. 2d 387, 397 (2005). To defeat this presumption, the party challenging the validity of a statute has the burden of clearly establishing a constitutional violation. *People v. Jones*, 223 Ill. 2d 569, 596 (2006). The constitutionality of a statute is a question of law requiring a *de novo* standard of review. *Jones*, 223 Ill. 2d at 596.

¶ 66 Relying on the United States Supreme Court and Illinois Supreme Court line of cases addressing the adult sentencing scheme as applied to youthful adults, defendant argues the trial court here was wrongly precluded from sentencing defendant, a youthful offender, to anything less than the mandatory minimum of 15 years. Accordingly, defendant claims, the court was unable to fully consider a lesser sentence that would afford him an opportunity for meaningful rehabilitative potential.

¶ 67 Defendant also relies on *State v. Lyle*, 854 N.W.2d 378, 402 (Iowa 2014), where the Iowa Supreme Court held all mandatory minimum juvenile sentences are unconstitutional. We are not persuaded to consider this foreign decision as applicable to the facts of this case. Instead, we follow our supreme court precedent, which has interpreted the three United States Supreme Court cases addressing the above-referenced juvenile sentencing issue. See *Miller v. Alabama*, 567 U.S. 460 (2012); *Graham v. Florida*, 560 U.S. 48 (2010); *Roper v. Simmons*, 543 U.S. 551 (2005). As our supreme court has stated, the rationale expressed in these three United States Supreme Court cases should be invoked "only in the context of the most severe of all criminal penalties." *People v. Patterson*, 2014 IL 115102, ¶ 110. In this case, defendant's sentence of 16 years is not of the same or similar severity as those involved in the cases defendant cites to which were *de facto* life sentences. *Cf. People v. Merriweather*, 2017 IL App (4th) 150407, ¶ 19 (juvenile's 70-year sentence may be analyzed under *Miller* in proper collateral proceedings). We find defendant's constitutional challenge unavailing.

¶ 68                                    E. Intent to Deliver

¶ 69 Defendant next contends his convictions related to his possession of cocaine and cannabis should be reduced to simple possession because the State failed to prove he intended to deliver, rather than personally use, the drugs. The evidence in this case demonstrated defendant possessed 0.7 grams of crack cocaine and 5.6 grams of cannabis. The State's expert witness, Officer Dailey, testified the typical personal dosage unit for crack cocaine is 0.2 grams and 0.5 grams for cannabis. In Dailey's opinion, the drugs in defendant's possession were intended to be sold based upon the weight, the packaging, and the absence of paraphernalia.

¶ 70 "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48. "When considering the sufficiency of the evidence, 'our function is not to retry the defendant.' " *People v. Beauchamp*, 241 Ill. 2d 1, 8 (2011) (quoting *People v. Sutherland*, 223 Ill. 2d 187, 242 (2006)). "As a reviewing court, '[w]e will not reverse a conviction unless the evidence is so improbable,

unsatisfactory, or inconclusive that it creates a reasonable doubt of defendant's guilt.' " *Beauchamp*, 241 Ill. 2d at 8 (quoting *Collins*, 214 Ill. 2d at 217).

¶ 71 In *Robinson*, our supreme court recognized a criminal defendant's intent to deliver a controlled substance is usually proved by circumstantial evidence. *People v. Robinson*, 167 Ill. 2d 397, 408 (1995). The court found factors probative to an intent deliver include (1) "whether the quantity of controlled substance in defendant's possession is too large to be viewed as being for personal consumption"; (2) the purity of the drug; (3) possession of weapons, large amounts of cash, and cellular telephones; (4) presence of drug paraphernalia; and (5) "the manner in which the substance is packaged." *Robinson*, 167 Ill. 2d at 408.

¶ 72 The *Robinson* court expressly stated, "[t]he question of whether the evidence is sufficient to prove intent to deliver must be determined on a case-by-case basis" (*Robinson*, 167 Ill. 2d at 412-13) and cautioned: "In light of the *** infinite number of potential factual scenarios in [drug] cases, there is no hard and fast rule to be applied in every case" (*Robinson*, 167 Ill. 2d at 414). "It is the jury's function to weigh the evidence, assess the credibility of the witnesses, resolve conflicts in the evidence, and draw reasonable inferences therefrom." *People v. Washington*, 2012 IL 110283, ¶ 60.

¶ 73 A reasonable jury could have relied on Dailey's testimony that it was likely defendant intended to deliver the packages he was carrying, based on the following: (1) both drugs were in individually wrapped packages, (2) he was carrying more doses than typically used for personal use, (3) he was carrying no means to consume the drugs himself, and (4) as the jury concluded, he possessed a handgun. Viewing the evidence in the light most favorable to the State, we conclude the evidence in this case was sufficient to support an inference defendant intended to deliver the cocaine and the cannabis.

¶ 74 F. One-Act, One-Crime

¶ 75 Defendant also contends his convictions for unlawful possession of a weapon by a felon and possession of a controlled substance with intent to deliver should be vacated under the one-act, one-crime doctrine because they constitute the underlying felonies of his armed-violence conviction and are carved from the same physical act. We disagree.

¶ 76 The State charged defendant in count I with armed violence, alleging he knowingly possessed cocaine while armed with a handgun. See 720 ILCS 5/33A-2(a) (West 2014). In count II, the State charged defendant with unlawful possession of a weapon by a felon. See 720 ILCS 5/24-1.1(a) (West 2014). In count III, the State charged defendant with unlawful possession of a controlled substance with intent to deliver cocaine. See 720 ILCS 570/401(c)(2) (West 2014). Defendant insists his convictions under counts II and III cannot stand.

¶ 77 The one-act, one-crime doctrine was first espoused by our supreme court in *People v. King*, 66 Ill. 2d 551, 559-66 (1977). The *King* doctrine provides that a defendant's conduct cannot result in multiple convictions if the convictions are based on precisely the same physical act and any of the offenses are included offenses. *King*, 66 Ill. 2d at 566. The supreme court reaffirmed the *King* doctrine in *People v. Rodriguez*, 169 Ill. 2d 183, 186 (1996). To analyze the doctrine, the reviewing court must first determine whether a defendant's conduct consisted of separate acts or a single physical act. *Rodriguez*, 169 Ill. 2d at 186. If separate acts were involved, the court must then determine whether any of the offenses are included offenses. *Rodriguez*, 169 Ill. 2d at 186.

¶ 78 Defendant relies on *People v. Williams*, 302 Ill. App. 3d 975, 978 (1999), where the Second District concluded the defendant's convictions for unlawful possession of a weapon by a felon and armed violence were born out of the same physical act. In *Williams*, the defendant was convicted of and sentenced to concurrent terms of 18 years in prison for armed violence based on possession of a controlled substance and 10 years in prison for unlawful possession of a weapon by a felon. The court held the two convictions were born out of the common act of a felon possessing a gun and drugs simultaneously. "In one instance the gun is combined with possession of a controlled substance to constitute armed violence, and in the other it is combined with the act of a convicted felon status to create a separate offense." *Williams*, 302 Ill. App. 3d at 978. Accordingly, the court reversed the separate conviction for unlawful possession of a weapon by a felon and vacated the sentence. *Williams*, 302 Ill. App. 3d at 978.

¶ 79 In *People v. White*, 311 Ill. App. 3d 374, 385 (2000), where the defendant was also convicted of armed violence predicated on being armed while in possession of a controlled substance and unlawful possession of a weapon by a felon, this court concluded *Williams* was wrongly decided. We determined the defendant's possession of the gun and his possession of the drugs, though simultaneous, were distinct acts. *White*, 311 Ill. App. 3d at 385. Also, it was not dispositive that the defendant's possession of the gun was common to both convictions. *White*, 311 Ill. App. 3d at 385. We cited *Rodriguez* for the proposition that a person can be guilty of two offenses when a common act is part of both. *White*, 311 Ill. App. 3d at 385 (citing *Rodriguez*, 169 Ill. 2d at 188). This court determined

> "that defendant's convictions for armed violence and unlawful possession of a weapon were based on separate acts. Though defendant may have possessed the weapon and the drugs close in time, or even simultaneously, we conclude nevertheless that each possession was a separate act. Although both offenses shared the common act of possession of a weapon, armed violence required the additional act of possession of the drugs, and unlawful possession of a weapon by a felon required the additional element of status as a felon. Accordingly, the two offenses did not result from precisely the same physical act." *White*, 311 Ill. App. 3d at 386.

¶ 80 In a recent decision, our supreme court was asked to reconcile *Williams* and *White*. See *People v. Coats*, 2018 IL 121926, ¶ 25. In doing so, the court concluded *Williams* misapplied the one-act, one-crime rule. *Coats*, 2018 IL 121926, ¶ 26. The court reminded that "a defendant can be convicted of two offenses even when they share a common act, as long as there is an additional act that can support a separate offense." *Coats*, 2018 IL 121926, ¶ 26 (citing *Rodriguez*, 169 Ill. 2d at 189).

¶ 81 Because defendant's possession of a handgun and his possession of drugs were separate acts, there is no violation under the first step of the *King* doctrine. See *Coats*, 2018 IL 121926, ¶ 27. Considering the second step of the *King* doctrine, we determine whether either offense is an included offense using the abstract elements approach. *Coats*, 2018 IL 121926, ¶ 30. "Under the abstract elements approach, a comparison is made of the statutory elements of the two offenses. If all of the elements of one offense are included within a second offense and the first offense contains no element not included in the second offense, the first offense is deemed a lesser-included offense of the second." *People v. Miller*, 238 Ill. 2d 161, 166 (2010).

¶ 82 Here, defendant was convicted of armed violence, which required his possession of the gun at the time he unlawfully possessed cocaine. See 720 ILCS 5/33A-2(a) (West 2014). He was also convicted of unlawful possession of a weapon by a felon, which required his possession of

a gun and having been convicted of a prior felony. See 720 ILCS 5/24-1.1(a) (West 2014). Each offense, though sharing the common act of possessing the weapon, required an additional act not required by the other. Thus, the two offenses did not result from the same physical act. See *White*, 311 Ill. App. 3d at 386. Because we find no error, defendant's alternative claim of ineffective assistance of counsel for failing to raise the one-act, one-crime issue at sentencing is without merit.

¶ 83                                   G. Sentencing Judgment

¶ 84        Finally, defendant challenges the imposition of certain fines and fees and the application of the proper *per diem* credit. For his first argument, defendant contends the sentencing judgment should reflect he was convicted of the unlawful possession of less than 1 gram of cocaine (720 ILCS 570/401(d) (West 2014)), a Class 2 felony, not 1 gram or more but less than 15 grams of cocaine (720 ILCS 570/401(c)(2) (West 2014)), a Class 1 felony. The State concedes this issue, and we accept the State's concession. On remand, we order the trial court to amend the sentencing judgment to accurately reflect defendant's conviction of unlawful possession of cocaine with intent to deliver in count III as a Class 2 felony rather than a Class 1 felony.

¶ 85        Defendant also questions whether his *per diem* credit of $5 per day (for a total of $995) for each day spent in pretrial custody was awarded toward his fines. At the sentencing hearing, the trial court assessed defendant $2000 as a drug-assessment fine pursuant to section 411.2(a)(2) of the Illinois Controlled Substances Act (720 ILCS 570/411.2(a)(2) (West 2014) (the required assessment for a Class 1 felony is $2000)). Because defendant was actually convicted of a Class 2 felony, he claims the court should have assessed a fine of $1000 pursuant to section 411.2(a)(3). See 720 ILCS 570/411.2(a)(3) (West 2014) (the required assessment for a Class 2 felony is $1000). Applying his $995 *per diem* credit to the required $1000 fine, defendant would be left with a $5 balance instead of the $1005 he claims is shown on the "fines and fees order," which we do not find as part of the record before us.

¶ 86        The State claims the $2000 assessment should not be disturbed because defendant should have actually been assessed $3000 pursuant to section 411.2(a)(1). See 720 ILCS 570/411.2(a)(1) (West 2014) (the required assessment for a Class X felony is $3000). Because defendant was convicted of a Class X offense when "he unlawfully possessed cocaine while armed with a handgun," the State claims, defendant should be assessed the Class-X-required assessment. We disagree with the State's interpretation of this statute.

¶ 87        Section 411.2(a) states as follows: "Every person convicted of *a violation of this Act*, *** shall be assessed for each offense a sum fixed at: (1) $3,000 for a Class X felony; (2) $2,000 for a Class 1 felony; (3) $1,000 for a Class 2 felony ***." (Emphasis added.) 720 ILCS 570/411.2(a) (West 2014). The statutory language is clear that the assessments only apply to violations of the Illinois Controlled Substances Act (720 ILCS 570/100 to 603 (West 2014)), not the Criminal Code of 2012 (720 ILCS 5/1-1 to 49-6 (West 2014)). Defendant's Class X conviction of armed violence is governed by sections 33A-2 and 33A-3 of the Criminal Code of 2012 (720 ILCS 5/33A-2(a), 33A-3(a) (West 2014)). Thus, we conclude defendant's drug fine should have been assessed as a Class 2 felony in the amount of $1000 (720 ILCS 570/411.2(a)(3) (West 2014)) less the *per diem* credit awarded in the amount of $995. We vacate the improperly imposed fine and remand with directions for the trial court to impose the appropriate fine as authorized by statute and award the appropriate *per diem* credit.

¶ 88                              III. CONCLUSION

¶ 89        For the reasons stated, we affirm the trial court's judgment, remand for the trial court to amend the sentencing judgment to reflect the proper class felony for count III (a Class 2 felony), vacate the improperly imposed fine, and remand with directions for the trial court to impose the appropriate fine as authorized by statute as set forth above. As part of our judgment, we award the State its $75 statutory assessment against defendant as costs of this appeal.

¶ 90        Affirmed in part and vacated in part; cause remanded with directions.