NOTICE
Decision filed 06/18/20. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2020 IL App (5th) 170423-U

NO. 5-17-0423

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Randolph County. |
| | ) | |
| v. | ) | No. 16-CF-102 |
| | ) | |
| ERNESTO OJEDA, | ) | Honorable |
| | ) | Richard A. Brown, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Barberis and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*: The State presented sufficient evidence to establish the elements of unlawful possession of contraband in a penal institution.

¶ 2    Ernesto Ojeda, the defendant, appeals from his conviction of unlawful possession of contraband in a penal institution (720 ILCS 5/31A-1.1(b) (West 2016)), contending the State did not prove his guilt beyond a reasonable doubt. We affirm.

¶ 3                                    BACKGROUND

¶ 4    On August 8, 2016, the State charged the defendant by an amended information with unlawful possession of contraband in a penal institution in violation of 720 ILCS

1

5/31A-1.1(b).[1] The amended information alleged that on April 25, 2016, the defendant knowingly possessed cannabis in Menard Correctional Center (Menard). The evidence adduced at trial, viewed in the light most favorable to the verdict, is as follows.

¶ 5    On April 22, 2016, the defendant was incarcerated at Menard, a maximum-security prison operated by the Illinois Department of Corrections. The defendant was housed with the general population and was working as a porter in the facility's law library. As a porter, the defendant pulled files and delivered them to inmates housed in Menard's segregation unit.

¶ 6    On April 22, 2016, Menard's internal affairs' department (department) initiated an investigation as to whether porters were moving legal contraband, such as food and coffee, into the facility's segregation unit. This department was responsible for investigating incidents within Menard, and had received information suggesting that porters were involved in the illegal distribution of contraband. Based upon this information, the department investigated the porters and, that afternoon, several correctional officers from the internal affairs department removed the porters, including the defendant, from the law library and strip-searched them. The search did not yield any illegal contraband from the defendant's person. During the ensuing investigation, correctional officers recovered food items and coffee from the defendant's bag. The defendant was placed on "investigatory status," and was moved from the general

---

[1]Both the original and amended informations cite to subsection (a), which forbids the bringing of such contraband into a penal institution. 720 ILCS 5/31A-1.1(a) (West 2016). Subsection (b) is the correct citation for the unlawful possession of contraband. 720 ILCS 5/31A-1.1(b) (West 2016). The jury instructions accepted by both parties referenced the elements in subsection (b).

population to the segregation unit. During this transfer, the defendant was handcuffed while escorted to the segregation unit, where he was strip-searched again. No contraband was recovered from the defendant's person during the second search.

¶ 7     After the defendant was dressed in a segregation jumpsuit, he was handcuffed and taken to segregation cell number 206. The defendant was placed inside the cell and his handcuffs were removed after he was locked inside of the cell. A correctional officer removed the defendant's handcuffs through the cell's "chuckhole," a 6-inch by 12-inch slot in the cell door used to pass food to the inmate. Although another inmate was housed in cell 206 earlier that day, the defendant was alone in the cell between the afternoon of April 22, 2016, and April 25, 2016.

¶ 8     On April 25, 2016, correctional officers William Spiller and Shaun Gee removed the defendant from cell 206 and took him to an interview room to question the defendant about the items recovered from his bag. After the interview, Spiller and Gee searched cell 206. During the search, the officers found a plastic bag rolled into a ball and stuck behind a bar on the inside of the cell door. The bag contained a substance that appeared to be cannabis. The substance field tested positive for tetrahydrocannabinol or THC, a component of cannabis. Underneath the plastic bag were three letters, or "kites." At trial, defendant acknowledged that the letters were written by him.[2] Officer Gee generated two "shakedown" slips for the items recovered during the search. One slip was for the

_____

[2]The defendant testified that the letters were written several years earlier. The defendant testified he believed that the correctional officers pulled the letters from his disciplinary file and were using them to frame him.

cannabis, which was a "major" infraction that resulted in a disciplinary report, and another slip was for the letters, which were not subject to disciplinary action.

¶ 9 The items were not visible from the outside of the cell. The items were also concealed when the cell door was open because that portion of the door slid behind the other half of the door. Officer Gee testified that when the cell door was closed, however, the items were "obvious" and "in plain sight."

¶ 10 For safety reasons, the doors in the cells of the segregation unit typically remained closed, even when the cells were unoccupied. Officer Spiller testified that, even if the door to cell 206 had remained open, it would not have been possible for someone to have placed the contraband in that location while the cell door was open because that area would have been blocked. Several correctional officers testified that it was common to find contraband, such as weapons and drugs, from cells in the segregation unit even though the inmates are strip-searched prior to being placed in the unit. The officers stated that a strip-search does not necessarily uncover all items of contraband and that the segregation inmates obtain contraband from other inmates.

¶ 11 The jury found the defendant guilty of the charged offense. The trial court sentenced the defendant to five years in the Department of Corrections, to be served consecutively to sentences he was already serving.

¶ 12 ANALYSIS

¶ 13 On appeal, the defendant argues the evidence was insufficient to sustain his conviction of the offense, in that the evidence failed to establish beyond a reasonable doubt that he knowingly possessed the cannabis. On review of a challenge to the

4

sufficiency of the evidence, this court determines whether any rational trier of fact could have found the required elements beyond a reasonable doubt. *People v. Newton*, 2018 IL 122958, ¶ 24. The evidence, and all reasonable inferences therefrom, are viewed in the light most favorable to the verdict. *People v. Wheeler*, 226 Ill. 2d 92, 114, 116-17 (2007). The trier of fact is in the best position to judge the credibility of the witnesses, and its findings concerning credibility are accorded great weight. *Wheeler*, 226 Ill. 2d at 114-15. On review, this court does not retry the defendant. *Wheeler*, 226 Ill. 2d at 114. We will reverse the jury's verdict only where the evidence is so unreasonable, improbable, or unsatisfactory that it raises a reasonable doubt of the defendant's guilt. *Wheeler*, 226 Ill. 2d at 115.

¶ 14 A person commits the crime of unlawful possession of contraband in a penal institution when he knowingly possesses contraband while in a penal institution. 720 ILCS 5/31A-1.1(b) (West 2016). "Contraband" includes cannabis, which is defined as marihuana or other substances which are part of the plant Cannabis Sativa, including THC. 720 ILCS 5/31A-0.1 (West 2016); 720 ILCS 550/3(a) (West 2016).

¶ 15 Possession of contraband may be actual or constructive. *People v. Anderson*, 2018 IL App (4th) 160037, ¶ 31. To establish constructive possession, the State must prove that the defendant knew of the presence of the cannabis, and that defendant exercised immediate and exclusive control over the area where the cannabis was found. *Anderson*, 2018 IL App (4th) 160037, ¶ 32. Knowledge of the presence of contraband can be inferred from several factors, including (1) the visibility of the contraband, (2) the amount of time the defendant had to observe the contraband, (3) any attempt by the

defendant to retrieve or conceal the contraband, and (4) the size of the contraband. See *People v. Love*, 404 Ill. App. 3d 784, 788 (2010). Control may be established by evidence that the defendant had the intent and capability to maintain control and dominion over the contraband, even if he did not presently have dominion over it. *Anderson*, 2018 IL App (4th) 160037, ¶ 32.

¶ 16    On appeal, the defendant asserts the State did not establish that he had immediate, exclusive control of the contraband or knowledge of its existence. The defendant contends reasonable doubt exists as to his knowing possession of the cannabis because the State did not establish that cell 206 was searched prior to his confinement in it, and there is no evidence that defendant was able to obtain the cannabis after his confinement in the cell. We disagree.

¶ 17    It was not necessary for the State to explain how the defendant acquired the contraband, it is enough that it proved the defendant knew of the presence of the cannabis, and that he exercised immediate and exclusive control over the area where the cannabis was found. Here, the evidence revealed the defendant was the sole occupant of cell 206 from the afternoon of April 22, 2016, until correctional officers removed him from the cell to interview him on April 25, 2016. The contraband was found stuck to the inside of the cell door, its presence "obvious" and "in plain view" to any occupant of the cell when the door was closed. Three letters, authored by the defendant, were located immediately next to and underneath the cannabis. The defendant's exclusive possession and control over the location where the contraband was found in plain view, coupled with

its close proximately to the defendant's possessions, suggests he knowingly possessed the cannabis.

¶ 18                                  CONCLUSION

¶ 19    Viewing the evidence in the light most favorable to the verdict, we find a rational trier of fact could have found beyond a reasonable doubt that defendant knowingly possessed the cannabis recovered from his prison cell. The judgment of the trial court is affirmed.


¶ 20    Affirmed.