# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Wright*, 2013 IL App (1st) 111803

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DANIEL WRIGHT, Defendant-Appellant. |
| District & No. | First District, Second Division<br>Docket No. 1-11-1803 |
| Filed | May 7, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In a prosecution for aggravated unlawful use of a weapon arising from an incident wherein defendant and another man ran from the police as a search warrant was being executed and they were apprehended after they fell down some stairs and two weapons were found near the men, defendant's conviction was reversed on the ground that the State failed to prove that defendant knowingly possessed the weapon attributed to him, since there was no testimony that defendant had the weapon in his hand or was making any motion suggesting that he was disposing of the weapon, three other individuals were present, and no physical evidence linked defendant to the weapon. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-CR-12584 (02); the Hon. Diane Cannon, Judge, presiding. |
| Judgment | Reversed. |

Counsel on
Appeal

Michael J. Pelletier, Alan D. Goldberg, and Peter Sgro, all of State Appellate Defender's Office, of Chicago, for appellant.

Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg and Peter Maltese, Assistant State's Attorneys, of counsel), for the People.

Panel

PRESIDING JUSTICE HARRIS delivered the judgment of the court, with opinion.

Justices Quinn and Connors concurred in the judgment and opinion.

## OPINION

¶ 1      Defendant, Daniel Wright, was found guilty after a bench trial of one count of aggravated unlawful use of a weapon. 720 ILCS 5/24-1.6 (West 2010). On appeal, at issue is whether the State proved all of the elements of the offense of aggravated unlawful use of a weapon beyond a reasonable doubt. We hold the State failed to satisfy its burden of proving defendant guilty beyond a reasonable doubt because it did not prove that defendant knowingly possessed the weapon that was attributed to him. Therefore, defendant's conviction must be reversed.

¶ 2      JURISDICTION

¶ 3      The circuit court sentenced defendant on May 18, 2011. Defendant timely filed his notice of appeal on June 7, 2011. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution and Illinois Supreme Court Rules 603 and 606, governing appeals from a final judgment of conviction in a criminal case entered below. Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. Rs. 603, 606 (eff. Feb. 6, 2013).

¶ 4      BACKGROUND

¶ 5      Defendant was charged by information with two counts of aggravated unlawful use of a weapon. Under both counts, the State alleged defendant "knowingly carried on or about his person, a firearm, at a time when he was not on his own land or in his own abode or fixed place of business." Under the first count, the State further alleged that "the firearm possessed was uncased, loaded and immediately accessible *** in violation of chapter 720, Act 5, Section 24-1.6(a)(1)/(3) (A) of the Illinois Compiled Statutes 1992 as amended." In the second count, the State alleged defendant "was under twenty one years of age and in possession of a handgun, in violation of chapter 720 act 5 section 24-1.6(a)(1)/ (3) (I) of the Illinois Compiled Statutes 1992 as amended." Defendant waived his right to a jury and the case proceeded to a bench trial.

¶ 6        The State called three witnesses: Officers Gena, Laster, and McNamara from the Cook County sheriff's police. The officers were part of a 10-person team executing a search warrant at 42 East 91st Street in Chicago, Illinois, on June 11, 2010, at about 8:15 in the evening.

¶ 7        Officer Gena was the first officer to enter the residence. He described the building as a "single family attached to another single family *** like a duplex." The front door was unlocked. A sergeant from the team announced their office, but the door was not answered. When he entered the residence, he noticed two people about 10 to 12 feet away, who then promptly ran. Officer Gena pursued the two people, who eventually went down the basement stairs. Officer Gena then observed Quentin Mitchell fall over defendant. Officer Gena testified that defendant came to a rest "just to the right of Quentin against the wall coming down." He did not see defendant's hands when defendant was running or falling down the steps. When Mitchell and defendant came to a rest, Officer Gena observed a handgun "just to the left of" and "within inches of Mitchell's left hand." Officer Gena yelled, "gun, gun, gun." At this time, Officer McNamara was directly behind him, weapon drawn, indicating to Mitchell and defendant not to move. Three more officers came down into the basement. Officer Gena recovered the handgun near Mitchell's hand, a "P89 semi-automatic nine millimeter." More officers then came down to the basement. Officer Gena testified that Officer Zach Smith announced there was another gun present. He observed Officer Laster recover the gun and hand it to Officer McNamara, who cleared the gun of its ammunition. The second gun was a "Colt 45," which was attributed to defendant.

¶ 8        At the police station, defendant confirmed to Officer Gena that he lived at 8127 Honore in Chicago, Illinois. Officer Gena also confirmed the following information regarding the residence at 42 East 91st Street: that defendant did not live or work there; that it was not a legitimate business; and that defendant did not own the land. Officer Gena further determined that defendant was under the age of 21. At the police station, five bullets were retrieved from the Colt 45 handgun.

¶ 9        On cross-examination, Officer Gena admitted that at no time did he see a weapon in defendant's hands, nor did he see defendant make any motion that would indicate or suggest that defendant discarded a weapon. Besides Mitchell and defendant, three other people were in the basement when the search warrant was executed. Officer Gena did not see how or when the other three people entered the basement. The other three people were detained briefly before being released. Officer Gena clarified that he did not see the gun attributed to defendant until Officer Laster handed it to Officer McNamara. When asked, "you, yourself never saw the weapon in proximity to [defendant]," Officer Gena answered "correct." He could not answer whether any fingerprints were found on the gun because he "did not get a report back" from the laboratory from where the gun attributed to defendant was sent.

¶ 10       Officer Laster entered the residence as part of the "entry team." Upon entry, he first went to clear the upstairs of the house. He heard there was a gun downstairs, so he immediately proceeded to the basement. Officers Smith and Barksdale also went to the basement with him. As Officer Laster proceeded to the basement, Officer Smith was in front of him. Officer Laster saw two people, one of whom was defendant, on the floor against the wall in the basement. Officer Laster testified that "[a]s I came down the steps, I saw a gun protruding

-3-

from underneath the Defendant." The gun was protruding from the "center mass" or torso area of defendant. Officer Laster noticed the "butt end of the firearm." Defendant was on his stomach at this time. Officer Laster testified defendant's "hands were within the proximity of his torso." The gun was "inches" from defendant's hands. He saw Officer Smith step on defendant's hand and yell out that there was a gun. Officer Laster testified he placed his hand on defendant's torso and removed the weapon. As he was doing so, Officer Laster "kind of pushed [defendant] to the side and *** removed the weapon." He handed Officer McNamara the weapon before handcuffing defendant. Officer Laster testified that "[t]here was a throw rug that was folded up at the bottom of the landing." When asked how the rug was situated in relationship to the gun, Office Laster explained that there was "the floor, throw rug, the gun, then the Defendant on top of it." He testified that he recovered the gun from on top of the throw rug, but under defendant's torso. Officer Laster described the basement area as a "laundry area" that had "other clutter and what not."

¶ 11       On cross-examination, Officer Laster clarified that although he saw the gun "inches" from defendant's hand, he never actually saw the gun in defendant's hand nor did he see defendant make any motion suggesting that he was disposing of the gun. After Officer Laster recovered the weapon, he handcuffed defendant. Officer Laster further testified that three other subjects were in the basement area at the time of the arrest. On re-cross-examination, Officer Laster testified he did not see defendant make any efforts to retrieve the gun. He clarified that he did not see how defendant ended up on the floor because when he first saw defendant, defendant was already on the floor.

¶ 12       Officer McNamara, of the Cook County sheriff's police gang unit, testified he was part of the entry team executing the search warrant. He also observed defendant and Mitchell run down to the basement of the residence and fall. Three other individuals were in the basement area. He saw Officer Laster recover a handgun from "the floor slightly underneath the Defendant." The gun was pulled from defendant's waist area. When asked whether he could see the gun from where he was standing, Officer McNamara answered "[a]s it was being picked up, yes." He knew the gun was underneath defendant's body because defendant had been "instructed to move a little as the gun was recovered." When defendant moved, Officer McNamara saw Officer Laster recover the gun. He cleared the gun after Officer Laster handed it to him. On cross-examination, Officer McNamara testified he never saw the gun in defendant's hand, nor did he see defendant make any moves suggesting he was discarding a weapon. He first saw the weapon as defendant was laying down on the floor. He did not see the gun on defendant when defendant ran downstairs.

¶ 13       The State then rested. Defendant made a motion for a directed finding of not guilty arguing the State failed to prove he knowingly possessed the gun, proving only that the gun was found in close proximity to him. The circuit court denied the motion.

¶ 14       Defendant testified on his own behalf. He admitted that he lived at 8217 South Honore in Chicago, Illinois. At the time of his arrest, however, defendant was at his uncle's, Quintin Mitchell's, house to see cousins of his who were visiting. He was sitting on the porch before he decided to go inside to get a cigarette. While inside, the police came inside the residence. Defendant "panicked and ran." He then ran down some stairs and stopped. The police told him to get on the ground. He got on his knees and put his hands up. Defendant testified that

"two other guys" and his uncle were in front of him when he was running. Defendant stated that "[t]he police then pushed me down the stairs on top of my uncle and I fell all the way down to the bottom." He landed on his stomach. Defendant demonstrated for the court the position he ended up in on the floor. Once on the floor, defendant testified that the police: "handcuffed my uncle, and then they–a black man came down and said I had a gun. Three officers ran toward me. One stepped on my back. The other one picked up the gun and then they handcuffed me." The gun was taken from the right side of his body. His hands were in the air. Defendant denied ever having a gun and testified that he told the police that he did not have a gun. He did not see a gun when he first fell on the floor. He testified that no one stepped on his hands, but an officer did step on his back.

¶ 15        On cross-examination, defendant testified that he fell on top of his uncle in the basement after being pushed by the police. Defendant admitted that his uncle's residence is not a business, but his uncle's home. He further admitted that he did not work at his uncle's residence and that he was under the age of 21. On redirect examination, defendant denied having a gun in his waistband. He also denied ever having reached for his waistband.

¶ 16        Officer Gena testified on behalf of defendant. The majority of his testimony was substantially similar to his earlier testimony. He did, however, testify that the gun attributed to defendant "was sent to the laboratory," but they did not "fingerprint it" because they "didn't send it for prints."[1] He denied pushing defendant down the stairs to the basement and denied that any of the other officers with him pushed anyone down the stairs.

¶ 17        Defendant called Officer Zachary Smith, from the Cook County sheriff's police, to testify. Officer Smith testified that he was part of the team that executed the search warrant at 42 East 91st street. Upon entry to the residence, Officer Smith first saw defendant in the basement lying on his stomach on the floor. He did not see a gun in defendant's hand. The first time he saw defendant's hands, defendant's hands were pressed against the floor. Although at first he did not see a gun by defendant, he did see a gun. He described the incident as such: "I discovered–I can't tell–I can't recall whether it was a towel or a rug laying on top of his right hand. Actually his right hand was partially underneath that item. I removed it, and that's when I encountered the weapon." He testified further that the gun was not under defendant's body. Defendant's hand was not on the gun, but it was near it. Officer Smith then stepped on defendant's right hand and yelled out there was a gun. He stepped on defendant's hand as a precaution. Another officer picked up the gun. Officer Smith denied that defendant's hand had been moving before he looked under the rug. After Officer Smith removed the rug, defendant was not looking at the gun and did not make any motion for the gun. Defendant then rested.

¶ 18        The circuit court found, based on the evidence presented and the credibility of the witnesses, that the State met its burden of proof beyond a reasonable doubt. Accordingly, the circuit court found defendant guilty of aggravated unlawful use of a weapon. Defendant's

---

[1]When Officer Gena testified for the State he stated he could not answer whether any fingerprints were found on the gun because he "did not get a report back" from the laboratory where the gun attributed to defendant was sent.

motion for a new trial was denied. After a sentencing hearing, defendant was sentenced to 18 months of probation. Defendant timely appealed.

¶ 19                                                    ANALYSIS

¶ 20    Before this court, defendant argues that the State failed to prove that he knowingly possessed a gun. Defendant characterizes the State's evidence as such: that defendant and another man fell down a flight of stairs at a residence that he did not live in and that he was found lying on top of or near a gun. Defendant points out that none of the law enforcement officers saw him with a gun or saw him make any type of motion that would suggest he was discarding a gun, and that no physical evidence tied him to the gun. Due to the State's failure to prove he knowingly possessed a gun, defendant argues the State failed to satisfy its burden of proving him guilty beyond a reasonable doubt as to each element of the offense of aggravated unlawful use of a weapon.

¶ 21    In response, the State argues that a review of the evidence and the reasonable inferences drawn from it shows that it met its burden of proving defendant guilty beyond a reasonable doubt. The State does not argue that defendant had actual possession of the gun; rather, it argues he had constructive possession of it. According to the State, reasonable inferences of defendant's guilt can be made from the evidence showing where the gun was found and from defendant's initial attempt at eluding the police by running into the basement.

¶ 22    In reply, defendant argues the testimony only established that he was near or on a gun after he fell down the stairs and that mere proximity to the weapon does not establish that he knowingly possessed the gun. He disputes the State's argument that his guilt can be inferred from his flight. Defendant characterizes his flight as at most an incriminating circumstance, not a material element of proof.

¶ 23    When reviewing whether the evidence presented was sufficient to sustain a criminal conviction, we must determine " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Furthermore, we will not retry the defendant nor will we substitute our judgment for that of the trier of fact regarding the weight given to or the credibility of a witness. *People v. Ross*, 407 Ill. App. 3d 931, 935 (2011). We must, however, keep in mind that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime for which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970); *People v. Carpenter*, 228 Ill. 2d 250, 264 (2008); see also *People v. Ehlert*, 211 Ill. 2d 192, 213 (2004) ("Simply stated, the fact that defendant is 'probably guilty' does not equate with guilt beyond a reasonable doubt."). If, after a careful examination of the evidence, we conclude that there was insufficient evidence of defendant's guilt beyond a reasonable doubt, the conviction must be reversed. *People v. Smith*, 185 Ill. 2d 532, 541 (1999); *People v. Hernandez*, 312 Ill. App. 3d 1032, 1036 (2000) ("That is, a criminal conviction cannot stand on appeal if the prosecution's evidence is so weak as to create a reasonable doubt as to defendant's guilt."). Although the trier of fact is given great

deference, its determinations are not conclusive. *People v. Ortiz*, 196 Ill. 2d 236, 259 (2001). "Rather, we will reverse a conviction where the evidence is so unreasonable, improbable or unsatisfactory as to justify a reasonable doubt of defendant's guilt." *Id.*

¶ 24    Section 24-1.6 of the Criminal Code of 1961 addresses the offense of aggravated unlawful use of a weapon. 720 ILCS 5/24-1.6 (West 2010). At the time of the offense, section 24-1.6 provided, in relevant part:

> "(a) A person commits the offense of aggravated unlawful use of a weapon when he or she knowingly:
>
> > (1) Carries on or about his or her person or in any vehicle or concealed on or about his or her person except when on his or her land or in his or her abode, legal dwelling, or fixed place of business, or on the land or in the legal dwelling of another person as an invitee with that person's permission, any pistol, revolver, stun gun or taser or other firearm; or
> >
> > (2) *** and
> >
> > (3) One of the following factors is present:
> >
> > > (A) the firearm possessed was uncased, loaded and immediately accessible at the time of the offense; or
> >
> > > * * *
> >
> > > (I) the person possessing the weapon was under 21 years of age ***." 720 ILCS 5/24-1.6 (a)(1), (2), (3)(A), (3)(I) (West 2010).

¶ 25    When, as in the case at bar, the defendant is not found to have had actually possessed the gun, the State must prove he constructively possessed the gun. *People v. McCarter*, 339 Ill. App. 3d 876, 879 (2003). "To establish guilt on a theory of constructive possession of a firearm, the State must prove: (1) that defendant had knowledge of the presence of the weapon; and (2) that defendant exercised immediate and exclusive control over the area when the weapon was found." *Ross*, 407 Ill. App. 3d at 935. The trier of fact may rely upon reasonable inferences of possession and knowledge. *Id.* Circumstantial evidence may be used to prove possession and knowledge. *People v. Bailey*, 333 Ill. App. 3d 888, 891 (2002). The State, however, still must present such evidence. *Id.*

¶ 26    In this case, we hold the State failed to prove beyond a reasonable doubt that defendant knowingly possessed the gun that was attributed to him. The State presented three witnesses, none of whom saw a gun in defendant's hands or noticed him make any actions that would indicate that defendant was discarding a gun. There was no physical evidence linking defendant to the gun. Officer Gena testified he did not even see the gun attributed to defendant until after it was recovered. Although Officer Laster and Officer McNamara testified the gun was found underneath defendant, neither officer testified that defendant made any movements to indicate knowledge of a weapon. The "mere presence" of a weapon is not sufficient to prove defendant had knowledge of the weapon. *Bailey*, 333 Ill. App. 3d at 891 (holding that, in the context of a weapon found in an automobile, that "without proof of such knowledge, individuals could be convicted *** for their mere presence in a vehicle in which a weapon was found"). Even if the State could prove defendant had knowledge of

the presence of the weapon, they would be unable to prove defendant exercised immediate and exclusive control over the basement area where the gun was found. *Ross*, 407 Ill. App. 3d at 935 ("To establish *** constructive possession of a firearm, the State must prove *** defendant had knowledge of the presence of the weapon; and *** that defendant exercised immediate and exclusive control over the area where the weapon was found."). The State's evidence established that the police chased defendant and Mitchell down a flight of stairs, whereupon Mitchell fell over defendant. Already in the basement area were three other unidentified people. Defendant did not live at the residence. Based on this evidence, we cannot say that the State proved beyond a reasonable doubt that defendant exercised exclusive or immediate control over the area where the weapon was found. Accordingly, we hold that the State failed to provide sufficient evidence of defendant's guilt because it did not prove defendant constructively possessed the gun attributed to him. Therefore, his conviction must be reversed.

¶ 27    We note that defendant, on appeal, also argued that the State failed to present any evidence that he was not an invitee on his uncle's property, that his trial counsel was ineffective, and that the aggravated unlawful use of a weapon statute is unconstitutional. Due to our conclusion in this case, we need not address defendant's remaining arguments. Concerning defendant's challenge to the constitutionality of the aggravated unlawful use of a weapon statute, our decision not to address the issue is consistent with the principle that courts of review should first attempt to resolve disputes on nonconstitutional grounds if possible. *People v. Jackson*, 2013 IL 113986, ¶ 14 ("This court has repeatedly cited the general principle that courts will address constitutional issues only as a last resort, relying whenever possible on nonconstitutional grounds to decide cases.").

¶ 28                                              CONCLUSION

¶ 29    The judgment of the circuit court is reversed.

¶ 30    Reversed.