2019 IL App (1st) 180274-U

SIXTH DIVISION
October 25, 2019

No. 1-18-0274

NOTICE: This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 15 CR 8921 |
| DAWON PITTS, | ) ) ) | Honorable Michael B. McHale, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices Cunningham and Connors concurred in the judgment.

**O R D E R**

¶ 1    *Held*: Conviction affirmed where there was substantial circumstantial evidence of possession of a weapon; the actual underlying conduct of a prior criminal act was an appropriate aggravating factor to consider at sentencing; and defendant did not demonstrate that his trial counsel was ineffective.

¶ 2    Defendant Dawon Pitts was convicted of being an armed habitual criminal. The trial court sentenced him to 15 years in prison. On appeal, Mr. Pitts argues (1) there was insufficient

evidence to support his conviction; (2) the trial court considered an improper aggravating factor at sentencing; and (3) trial counsel was ineffective for failing to move to quash Mr. Pitts's arrest and suppress evidence, for failing to properly cross-examine a witness, and for failing to object to the court's consideration of the improper aggravating factor at sentencing. For the following reasons, we reject each of these arguments and affirm Mr. Pitts's conviction and sentence.

¶ 3                                     I. BACKGROUND

¶ 4    Mr. Pitts was arrested on May 25, 2015, and charged with being an armed habitual criminal, 4 counts of unlawful possession of a weapon by a felon, and 10 counts of aggravated unlawful use of a weapon.

¶ 5    At the bench trial, Detectives Streeper and Bruno from the Chicago Police Department testified that they were on duty together on the night of May 25, 2015, at around 9:54 p.m. Because on the night in question they had not yet been promoted to detectives, we refer to them as officers when summarizing their accounts of that night. According to Detective Streeper, the two were patrolling in an unmarked car when they received a call that shots had been fired in the area of 74th Street and Dante Avenue in Chicago and that a black car was fleeing the scene.

¶ 6    The officers drove to the scene and when they were about a block away, on 72nd Place, they spotted a black car parked on the side of the road with four individuals standing near the car, two on either side. As Officer Streeper got out of his car and approached the individuals, he noticed one person, later identified as Mr. Harris, "quickly enter the rear passenger side of the black vehicle" and "mak[e] furtive movements with his arms and hands," after which he got out of the car and "place[d] a handgun underneath that black vehicle." Officer Streeper then detained Mr. Harris, as well as Mr. Bennett, the other individual on the passenger side of the car. While Officer Streeper was doing this, the two individuals on the driver side of the car, one of whom

2

was Mr. Pitts, fled east down 72nd Place.

¶ 7     Officer Bruno pursued Mr. Pitts in the unmarked police car while the other individual ran off and was never found or identified. Both detectives testified that Mr. Pitts was holding his side while he was running. Believing that Mr. Pitts had a gun, Officer Bruno got out of the car, pointed his gun at Mr. Pitts, and told Mr. Pitts to show his hands. Detective Bruno testified that Mr. Pitts "would not follow verbal directions" and was "still holding his right side" as he turned and ran west down 72nd Place, back to where the black car was parked.

¶ 8     Officer Bruno called out to Officer Streeper that Mr. Pitts was headed back his way, and Officer Streeper took up the chase, leaving Officer Bruno to watch Mr. Harris and Mr. Bennett until backup arrived. Detective Streeper testified that Mr. Pitts turned north and "ran up the stairwell at 1448 East 72nd Place." Detective Streeper explained that there was "about a ten foot drop" after the stairwell and he continued to pursue Mr. Pitts as Mr. Pitts "ran towards the back of the house." Once Mr. Pitts reached the backyard, he turned towards another stairwell located in the back of the house. Detective Streeper testified that as Mr. Pitts ran past this stairwell, he "heard a metal object hit the pavement[.]" Mr. Pitts then turned to face Officer Streeper and, according to the officer, was no longer holding his side, but had taken up "a fighting stance." A struggle ensued, with Officer Streeper eventually detaining Mr. Pitts.

¶ 9     As Officer Streeper escorted Mr. Pitts out of the backyard, numerous officers arrived on the scene, including Officer Bruno. Officer Streeper told Officer Bruno to look for a gun in the stairwell. Both officers observed a Smith & Wesson .45-caliber gun, loaded with eight live rounds, in the stairwell, which was otherwise "clear of debris." Detective Streeper testified that only one or two minutes had passed between when he heard a metal object hit the ground and when the gun was recovered. He further stated that there were no civilians in the backyard apart

from Mr. Pitts.

¶ 10    Detectives Streeper and Bruno were both asked to explain various inconsistencies between the original police reports and the trial testimony. In the various reports, officers stated that the arrest occurred at 1444 East 72nd Place, instead of 1448 East 72nd Place. Additionally, Officer Brun, who was not at the scene, prepared police reports concerning the incident that incorrectly stated that the gun was found during a custodial search of Mr. Pitts and not in the stairwell. Officer Bruno, realizing Officer Brun's mistakes, made a supplemental report clarifying that the arrest occurred at 1448 East 72nd Place and that the gun was recovered in the stairwell of that residence, not on Mr. Pitts's person. Mr. Pitts's trial counsel's cross-examination of Detectives Streeper and Bruno largely focused on these discrepancies. However, he also established that Detective Bruno had no idea what happened to the fourth individual, who also fled.

¶ 11    In closing, Mr. Pitts's trial counsel argued both that the inconsistencies in the reports were evidence that the detectives' accounts were not credible and that, even without the inconsistencies, there was insufficient evidence to convict Mr. Pitts. He stressed that "at no time did you hear that Mr. Pitts carried a gun" and further argued that there was nothing to suggest that Mr. Pitts wasn't just holding up his pants as he ran. Finally, trial counsel argued that Detective Streeper never said that he saw Mr. Pitts throw an object or make a throwing motion and that no one knew what had happened to the fourth person the officers observed standing outside of the black car.

¶ 12    The trial court was unconcerned with the inconsistencies in the reports, stating, "it's not unusual in a situation like this to divide up the responsibilities and [have] separate people writing separate reports" and "as far as the addresses go I don't find that significant enough to comment

4

on." The court found the detectives to be credible witnesses. The record reflects that following the detectives' testimony, the State entered into evidence prior certified convictions for vehicular hijacking and armed robbery against Mr. Pitts, both of which are qualifying predicate offenses for a charge of being an armed habitual criminal. Mr. Pitts did not object.

¶ 13    In weighing the evidence, the trial court noted that Mr. Pitts fled the scene while holding his waistband. The court stated, "[f]light is evidence of consciousness of guilt" and that, "[c]ertainly there is a reasonable inference there is a reason he is holding his side[.]" The court pointed out that when Officer Bruno pointed his gun at Mr. Pitts after the initial chase, "[Mr. Pitts] refuse[d] to remove his hands from [his] waist area, which is certainly strong circumstantial evidence that there might have been something pretty heavy there that he didn't want falling to the ground if he removed his hands." The court also noted that Officer Streeper was "close behind [Mr. Pitts] when he hear[d] a metallic object hit the pavement" and that the gun was found only one to two minutes later. The court stated, "it's not plausible to me that some other member of the public had just randomly placed a gun there, especially when [the officer] heard the sound of the metallic object hitting the pavement and the gun is recovered in such a short amount of time." The court found Mr. Pitts guilty of two counts of unlawful possession of a weapon by a felon and of being an armed habitual criminal.

¶ 14    The court denied Mr. Pitts's motion to reconsider or for a new trial.

¶ 15    At the sentencing hearing, the court asked about the prior vehicular hijacking and armed robbery convictions that qualified Mr. Pitts for armed-habitual-criminal status. The court first questioned whether the convictions were separate instances. The State said that they were, but acknowledged that they did take place on the same day. The court then asked what weapon was used in the armed robbery. The State said "a semi-automatic handgun." Mr. Pitts did not object.

5

¶ 16    The court sentenced Mr. Pitts to 15 years in prison for being an armed habitual criminal, reasoning that the predicate offenses were "violent felony convictions that put the public's safety at great risk" and, regarding the current offense, "[a] 45 caliber is a huge bullet which does massive damage to a body if it is shot with a 45 caliber weapon." The court noted that "[Mr. Pitts] refused to obey officer's commands; wouldn't put up his hands; ran; and then dropped the gun"—which was recovered loaded—and that the court was "concerned for the safety of the citizens of Chicago."

¶ 17    Mr. Pitts filed a motion to reconsider his sentence, which the court denied.

¶ 18                                    II. JURISDICTION

¶ 19    Mr. Pitts was sentenced on January 3, 2018, and filed a timely notice of appeal that same day. This court has jurisdiction pursuant to article VI, section 6 of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rules 603 (eff. Feb. 6, 2013) and 606 (eff. July 1, 2017), governing appeals from final judgments of conviction in criminal cases.

¶ 20                                    III. ANALYSIS

¶ 21    On appeal, Mr. Pitts challenges the sufficiency of the evidence that he possessed the gun, the sentencing judge's consideration of his use of a firearm in one of his predicate convictions, and the effectiveness of his trial counsel. We address each of these in turn.

¶ 22                           A. Sufficiency of the Evidence

¶ 23    Mr. Pitts first argues that the State failed to prove beyond a reasonable doubt that he possessed a weapon as required for his armed habitual criminal conviction. We disagree.

¶ 24    When determining whether the trial evidence was sufficient to sustain a conviction, a court must ask " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime

beyond a reasonable doubt.' " (Emphasis in original.) *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318 (1979)). "Proof beyond a reasonable doubt does not require the exclusion of every possible doubt, and a conviction may be sustained wholly upon circumstantial evidence where the entire chain of circumstances leads to a reasonable and moral certainty that the defendant committed the crime." *People v. Peete*, 318 Ill. App. 3d 961, 965 (2001).

¶ 25    As a preliminary matter, it is important to note that the State argued at trial that Mr. Pitts *actually* possessed the gun. Therefore, the State correctly points out that Mr. Pitts's reliance on *People v. Wright*, 2013 IL App (1st) 111803, ¶ 21, a case about constructive possession, not actual possession, is misplaced. *People v. Wright*, 2013 IL App (1st) 111803, ¶ 21.

¶ 26    Mr. Pitts stresses the lack of direct evidence in this case, stating that he was not proved guilty beyond a reasonable doubt because "there was no testimony that Mr. Pitts had the weapon in his hand or that he was making any motion suggesting that he was disposing of the weapon and no physical evidence linked him to the weapon." However, circumstantial evidence may be sufficient proof of possession—even without direct evidence of the weapon being in an individual's hand. See, *e.g.*, *People v. Nesbit*, 398 Ill. App. 3d 200, 210-11 (2010) (finding sufficient evidence of possession where the defendant looked like he was concealing a weapon while police were in pursuit and a weapon was recovered in an area he ran past); *People v. Brown*, 309 Ill. App. 3d 599, 609 (1999) (finding sufficient evidence of possession where an officer saw something fall from a fleeing defendant, heard a metal object hit the concrete, and later recovered a firearm from that location). Indeed, the defendant in *Peete* was convicted on almost identical facts. He ran from police officers who were attempting to stop him, a pursing officer saw him "start to 'dig' at the right side of his waistband" as he rounded a corner, after

7

which he no longer was digging at his side, and a gun was later recovered from the hedges on that corner. *Peete*, 318 Ill. App. 3d at 963. The court found that this was sufficient evidence for a rational trier of fact to have found beyond a reasonable doubt that the defendant possessed the gun. *Id.* at 966.

¶ 27    Similarly, there is sufficient proof of possession here. The evidence shows that Mr. Pitts ran away from Officers Streeper and Bruno while holding his side. He did not follow officer commands to show his hands, but instead continued to hold his side. Officer Streeper heard something metal hit the pavement as Mr. Pitts ran past a stairwell, after which Mr. Pitts was no longer holding his side. Finally, a gun was recovered from the stairwell one or two minutes later, with no other objects in the stairwell and no other civilians in the immediate area. This evidence was certainly a sufficient basis on which a rational trier of fact could have found Mr. Pitts possessed the weapon, as charged.

¶ 28                    B. Permissible Sentencing Factors

¶ 29    Mr. Pitts's second argument on appeal is that it was improper for the trial court to consider his use of a gun during one of the two predicate offenses that supported his being an armed habitual criminal. Again, we disagree.

¶ 30    Illinois law specifically enumerates "[f]actors in aggravation and extended-term sentencing," which include a defendant's "history of prior delinquency or criminal activity." 730 ILCS 5/5-5-3.2(a)(3) (West 2014). It is well established that criminal conduct may be considered at sentencing regardless of whether that conduct resulted in a conviction. See *People v. Robinson*, 286 Ill. App. 3d 903, 910 (1997) ("Evidence of other criminal conduct is admissible at sentencing, even though a defendant has previously been acquitted of that conduct."); *People v. Jackson*, 149 Ill. 2d 540, 548 (1992) ("[O]utstanding indictments or other criminal conduct for

which there has been no prosecution or conviction may be considered in sentencing."); *People v. La Pointe*, 88 Ill. 2d 482, 499 (1981) (finding that a sentencing court may "properly receive proof of criminal conduct for which no prosecution and conviction ensued").

¶ 31    While Mr. Pitts is correct that the predicate conviction was for armed robbery with a bludgeon, rather than with a firearm, a sentencing judge may still properly inquire into the underlying criminal conduct of a conviction. *People v. Glass*, 144 Ill. App. 3d 296, 302-03 (1986) (finding it was proper for the sentencing court to consider testimony concerning multiple attacks where the charges stemming from those attacks were dismissed as part of a plea bargain). The trial judge in Mr. Pitts's case made a finding that the predicate armed robbery involved a firearm. Mr. Pitts provides us with nothing to suggest that this factual finding was contrary to the evidence and the State has confirmed that it was in fact correct by pointing us to records from the trial court in Mr. Pitts's armed robbery case. Those records reflect that, although Mr. Pitts bargained for a lesser sentence of armed robbery with a bludgeon, he actually possessed a firearm during the robbery. HEARING ON MOTION FOR JOINDER in the circuit court of Cook County. People v. Dawon Pitts, No. 10 CR 845. The appellate court is permitted to take judicial notice of court records. See *In re N.G.*, 2018 IL 121939, ¶ 32 (finding it "was well within the appellate court's authority" to take judicial notice of court records); *Metropolitan Life Insurance Co. v. American National Bank and Trust Co.*, 288 Ill. App. 3d 760, 764 (1997) ("This court may take judicial notice of public documents that are included in the records of other courts."). Mr. Pitts could have objected to those records in a reply brief, but elected not to. Accordingly, Mr. Pitts's argument that the trial court considered an improper aggravating factor is without merit.

¶ 32                    C. Ineffective Assistance of Counsel

¶ 33    Finally, we turn to Mr. Pitts's ineffective assistance of counsel arguments. "To prevail on a claim of ineffective assistance, a defendant must show both a deficiency in counsel's performance and prejudice resulting from the alleged deficiency." *People v. Edwards*, 195 Ill. 2d 142, 162 (2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). There is a strong presumption that counsel's conduct is reasonable and judicial scrutiny should be highly deferential. *Id.* at 163. Because "[a] defendant must satisfy both prongs of the *Strickland* test in order to prevail," our analysis of those prongs may proceed in either order. *In re Edgar C.*, 2014 IL App (1st) 141703, ¶ 79.

¶ 34    Here, Mr. Pitts specifically argues that his trial counsel was ineffective for failing to (1) "file and litigate a motion to quash and suppress evidence[,]" (2) properly cross-examine Detective Streeper, and (3) object to the trial court's consideration of Mr. Pitts's use of a weapon in a prior conviction during sentencing. We consider and reject each of these claims.

¶ 35                1. Failure to Move to Quash Arrest and Suppress Evidence

¶ 36    In order to satisfy the prejudice requirement for a claim of ineffective assistance of counsel based on a failure to file a motion to suppress, there must be a reasonable probability that the motion would have been granted and that "the trial would have been different had the evidence been suppressed." *People v. Henderson*, 2013 IL 114040, ¶ 12. Mr. Pitts does not explain what evidence might have been suppressed if a motion had been filed or how that would have changed the outcome of his trial. Moreover, there was no basis for any motion to suppress because the police had probable cause to arrest him when they did.

¶ 37    Mr. Pitts argues that his case presents two possible seizures, "neither of which was justified by the totality of circumstances." The first seizure, according to Mr. Pitts, occurred when Officer Streeper detained Mr. Harris and Mr. Bennett. Mr. Pitts argues that at that time he

would not have felt free to leave and "there was nothing to suggest that Mr. Pitts participated or was about to participate in any criminal activity." Mr. Pitts argues that the second seizure—his actual arrest—was unconstitutional because although Mr. Pitts was refusing to cooperate with the two detectives, refusal to cooperate is not sufficient justification for an arrest.

¶ 38    The fourth amendment requires that an arrest made in a public place without a warrant be supported by probable cause. *People v. Montgomery*, 112 Ill. 2d 517, 525 (1986). Probable cause exists when the totality of the circumstances would lead a reasonably prudent person to believe that the suspect has committed or is committing a crime. *Id.* at 525.

¶ 39    Officer Streeper's detention of Mr. Harris and Mr. Bennett was not a seizure of Mr. Pitts. A person is seized by the police when, in light of the surrounding circumstances, a reasonable person would not have felt free to leave. *People v. Thomas*, 198 Ill. 2d 103, 111 (2001). The Supreme Court of the United States has specified that seizure of an individual requires either physical force or submission to authority and that no seizure occurs when a person does not yield to police authority. *California v. Hodari D.*, 499 U.S. 621, 626 (1991). Here, Officer Streeper did not physically restrain Mr. Pitts when he detained Mr. Harris and Mr. Bennett, and Mr. Pitts clearly did not submit to any show of authority; he fled.

¶ 40    Mr. Pitts argues that even if he was not arrested but only stopped for questioning, this was an investigatory stop that, under *Terry v. Ohio*. 392 U.S. 1, 21 (1968), had to be supported by a reasonable suspicion of criminal activity. At that point, however, Officers Streeper and Bruno had received a call of shots fired, were told a black car was fleeing the scene, saw a vehicle matching the description with four individuals standing outside of it, and witnessed one of the individuals hide a gun. This was more than enough for the detectives to conduct a *Terry* stop of the entire group. See *People v. Lee*, 48 Ill. 2d 272 (1971) (investigatory stop of an entire

11

group of individuals was constitutional where the group was in the area of a reported gang shooting and they were wearing headgear that members of a gang usually wore).

¶ 41 At the point that Mr. Pitts was arrested, after he had run from the investigatory stop, the police had probable cause to believe that he was guilty of illegal gun possession. Mr. Pitts is correct that a mere refusal to cooperate does not justify an arrest. *People v. Kipfer*, 356 Ill. App. 3d 132 (2005) ("[R]efusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.") (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). Mr. Pitts's flight, however, was not a mere refusal to cooperate. Mr. Pitts was by a car that matched the description of the one fleeing a shooting, an officer witnessed someone in his group hide a gun, and Mr. Pitts fled—which is more than refusing to cooperate. As the court in *Kipfer* explained, "unprovoked flight is simply not a mere refusal to cooperate." Indeed, it is well established that flight is evidence of consciousness of guilt. See, *e.g.*, *People v. Lewis*, 2015 IL App (1st) 122411, ¶ 77 (stating that "flight is a *circumstance* which may be considered by the jury as tending to prove guilt") (Emphasis in original.).

¶ 42 Further, the fact that Mr. Pitts ran from a lawful *Terry* stop while holding his side, dropped something metallic onto the pavement, and then turned and faced Officer Streeper in a fighting stance satisfied the probable cause requirement for his warrantless arrest. See *People v. Jones*, 245 Ill. App. 3d 302, 306-07 (1993) (probable cause to arrest existed where the officers attempted to conduct a lawful *Terry* stop of a group of men suspected to have a shotgun and one of the men fled from the police). Because Officers Streeper and Bruno had the reasonable suspicion of criminal activity necessary to conduct their investigatory stop and probable cause to arrest Mr. Pitts, a motion to quash the arrest and suppress evidence would not have been granted in this case. Therefore, Mr. Pitts cannot establish that he was prejudiced by his trial counsel's

failure to file such a motion.

¶ 43                    2. Failure to Properly Cross-Examine

¶ 44    Mr. Pitts also argues that his counsel was ineffective during cross-examination of Detective Streeper because counsel focused on the discrepancies in the police reports, rather than questioning Detective Streeper on potential gaps in his testimony.

¶ 45    Mr. Pitts argues that trial counsel should have challenged Detective Streeper's "knowledge and observations of what occurred." He specifically enumerates six questions— noting that this is not an exhaustive list—that his trial counsel should have asked Detective Streeper: (1) whether he had "observed Mr. Pitts make any arm motions that indicated he was throwing an object"; (2) "where, exactly, was Mr. Pitts in relation to the stairwell when the detective allegedly heard the metal sound"; (3) whether he "knew where the unidentified fourth individual who ran the same direction as Mr. Pitts was in relation to the stairwell when he allegedly heard the metal sound"; (4) whether "the detective knew what this aforesaid fo[u]rth individual was doing, or what he possessed, at the time he allegedly heard the metal sound"; (5) "whether he knew where any of the individuals who resided at that residence were when he heard the sound—or what they were doing"; and (6) "whether the detective was able to observe if any individuals were near the vicinity of the stairwell or left the vicinity of the stairwell when he lost sight of it during his chase of Mr. Pitts." Mr. Pitts insists that "[t]he value of these question is undeniable" because "they would [have] show[n] that not only did Detective Streeper *** not see Mr. Pitts throw an object—when there was nothing obstructing his view—but that he could not rule out the reasonable possibility that it was another individual who threw the gun."

¶ 46    "Cross-examination is a matter of trial strategy which is entitled to substantial deference." *People v. Johnson*, 372 Ill. App. 3d 772, 778 (2007) (citing *People v. Pecoraro*, 175

13

Ill. 2d 294, 326-27 (1997)). "[A] [d]efendant can only prevail on an ineffectiveness claim by showing that counsel's approach to cross-examination was objectively unreasonable." *Pecoraro*, 175 Ill. 2d at 327. Mr. Pitts's trial counsel questioned Detective Streeper on discrepancies in the police reports and argued in closing that these discrepancies made his testimony unreliable. Trial counsel further argued that, even without the discrepancies, the testimony alone was not sufficient evidence of Mr. Pitts's guilt because Mr. Pitts could have been holding up his pants and there was no evidence he actually held a gun. Counsel also noted that Detective Streeper never said that he saw Mr. Pitts throw an object or even make a throwing motion, and no one had any idea where the fourth member of the group was at this time. There was nothing unreasonable with this cross-examination.

¶ 47     Here, the suggestion—in hindsight—of a handful of questions that might have been asked during cross-examination is insufficient to support a claim of ineffective assistance of counsel. Mr. Pitts fails to demonstrate that any of these questions would have significantly undermined the State's case. In fact, the record is clear that most of the evidence Mr. Pitts claims would have been uncovered by this cross-examination in fact did come out during the trial. There are questions about whether Detective Streeper saw Mr. Pitts throw a gun, which Detective Streeper acknowledged that he did not actually see Mr. Pitts throw an object when he testified that he heard a metallic sound. There were also questions about the unidentified fourth person in the car, suggesting that he could have thrown the gun. However, trial counsel did ask Detective Bruno if he had any idea where the fourth individual was while he was chasing Mr. Pitts, which Detective Bruno did not, and both detectives testified that no one apart from the police and Mr. Pitts was in the backyard of 1448 East 72nd Place.

¶ 48     In short, Mr. Pitts's trial counsel's approach was not objectively unreasonable and his

cross-examination was not ineffective. *People v. Smith*, 177 Ill. 2d 53, 93 (1997) ("Notwithstanding defendant's argument that cross-examination of [the witness] might have been treated differently, we cannot say that trial counsel's approach fell outside the wide range of reasonable professional assistance and, thus, defendant's trial counsel was not deficient.").

¶ 49                                3. Failure to Object to Sentencing Factor

¶ 50    As discussed above, it was proper for the sentencing judge to consider the weapon Mr. Pitts used when he engaged in past criminal conduct. Because this was a proper consideration, counsel's failure to object was neither unreasonable nor prejudicial, and therefore did not constitute ineffective assistance. *People v. Jones*, 399 Ill. App. 3d 341, 372 (2010) ("If the underlying issue is nonmeritorious, the defendant has suffered no prejudice.").

¶ 51                                        IV. CONCLUSION

¶ 52    For the above reasons, we affirm the judgment of the circuit court.

¶ 53    Affirmed.