2020 IL App (2d) 170603-U
No. 2-17-0603
Order filed February 7, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Lake County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CF-1414 |
| | ) | |
| GREGORY V. M. HARRIS JR., | ) | Honorable |
| | ) | Daniel B. Shanes, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE SCHOSTOK delivered the judgment of the court.
Justices Hudson and Bridges concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Defendant was proved guilty beyond a reasonable doubt of unlawful possession of a weapon by a felon: the State presented sufficient evidence of actual possession in that defendant was found in back seat of car with pistol in the rear pocket of the seat in front of him.

¶ 2   Defendant, Gregory V. M. Harris Jr., and a female companion, Schelene Scott, rode in a car with two other people to a park that had closed for the day.   Defendant and Scott remained in the back seat while the others walked to a nearby beach.   A police officer encountered defendant and Scott in the car and recovered a loaded semiautomatic handgun from the rear pocket of the seat in front of defendant.

¶ 3    A jury found defendant guilty of one count of unlawful possession of a weapon by a felon (720 ILCS 5/24-1.1(a) (West 2016)).   On direct appeal, defendant asserts that his conviction must be reversed because the State did not prove beyond a reasonable doubt that he had actual or constructive possession of the weapon.   We affirm.

¶ 4                                I. BACKGROUND

¶ 5    At 4 or 5 p.m. on May 24, 2016, Scott was riding in a car with Dontra Davis and a person she identified as "Gabriel."   Davis drove, but Scott did not know whether the car was his.   Scott estimated that she was in the car for 15 minutes before the three picked up defendant.   Scott had known defendant for about two years before the incident.   The four rode around for a few hours, stopping once to buy liquor.   Scott conceded that she was intoxicated.   Scott also had three prior convictions of retail theft.

¶ 6    Later in the evening, the group rode to the lakefront park at Round Lake.   Scott knew that it was "after hours."   She and defendant stayed in the car to smoke marijuana or drink while the other two walked to the beach.   She did not see the handgun before the police found it.

¶ 7    At about 10 p.m., Round Lake Beach police officer Marcian-Bogdan Butur drove by the park.   Although the park closed at sunset, a car was in a parking area, which was poorly lit. Butur stopped a few car-lengths away and illuminated the car with the patrol car's spotlight.   He saw defendant and Scott, sitting close together in the back seat.   Scott was behind the driver's seat, and defendant was behind the front passenger seat.   When the light hit them, "they separated immediately."   Butur left the spotlight pointed at the car and walked toward the driver's-side rear door.   Butur noted "the distinct odor of cannabis in the air," which became stronger as he approached.   The officer testified that he told defendant and Scott to exit the car, but only Scott complied:

"In a clear voice *** I requested both subjects exit[] the vehicle. The female opened the door behind the driver. She exited. The male remained in the car. I could see his shoulders move and his hands move what I would call furtive movements, and [he] did not respond to any verbal commands that I issued to him.

***

[He was r]eaching down by his feet underneath the front passenger seat in the immediate area that he was sitting in. I could see shoulders moving up down, his head left to right still unresponsive to verbal commands."

Through the window, the officer could see defendant's body only from the elbows up. Furthermore, Scott was between the officer and defendant while defendant made some of his furtive movements.

¶ 8    Butur ordered Scott and defendant to show their hands. Scott, who seemed "groggy," "fix[ed] her clothing" and then complied. Defendant continued to move his arms and eventually exited the car. Rather than showing his hands, he went around to the front passenger-side door and opened it. Butur unholstered his handgun, and defendant stepped away from the car so the officer could see that his hands were empty.

¶ 9    Butur asked the pair for identification. Neither would provide an identification card, and defendant said falsely that his name was "Keylan Stoker." A warrant for defendant's arrest was on file.

¶ 10    A backup officer arrived, giving Butur a chance to examine the car's interior with his flashlight. He saw "a plastic cup with sort of reddish liquid inside" on the floor near the front passenger seat and "green plant[-]like material with the odor of cannabis over the floorboards of the vehicle."

¶ 11    Defendant asked the officers to let him call his mother, but then he "took off running," and Butur chased him.    As defendant fled, he tipped garbage cans into the officer's path.    Defendant fell three times, losing a shoe and his belt, before Butur caught him about two and a half blocks from the parking area.

¶ 12    Butur resumed searching the car and found a black semiautomatic handgun in the pocket on the front passenger seat-back.    Butur took a photograph, which showed the butt of the gun protruding just outside the seat pocket and facing right.    The gun had a round in the chamber and nine rounds in the magazine.    The safety was off.

¶ 13    Round Lake Beach police officers Katherine Crawford and Roxanne Stacioiu responded to Butur's request for backup.    Crawford found Gabriel and Davis on the beach and directed them to go to her car.    Davis fled, instead.    Stacioiu testified that defendant became "agitated" and also "took off running."

¶ 14    The parties stipulated that defendant had a prior felony conviction and that no fingerprints useful for comparison were found on the handgun or ammunition.

¶ 15    The jury found defendant guilty of unlawful possession of a weapon by a felon.    See 720 ILCS 5/24-1.1(a) (West 2016).    The trial court denied defendant's posttrial motion challenging the sufficiency of the evidence.    The court found that defendant's prior convictions rendered him eligible for a Class X felony sentence and imposed a 14-year prison term.    Defendant timely appealed.

¶ 16                                    II. ANALYSIS

¶ 17                              A. Standard of Review

¶ 18    Defendant asserts that his conviction must be reversed because the State did not prove beyond a reasonable doubt that he had actual or constructive possession of the handgun, an

essential element of unlawful possession of a weapon by a felon. See 720 ILCS 5/24-1.1(a) (2016) ("It is unlawful for a person to knowingly possess on or about his person or on his land or in his own abode or fixed place of business any weapon prohibited under Section 24-1 of this Act or any firearm or any firearm ammunition if the person has been convicted of a felony under the laws of this State or any other jurisdiction."). The State argues that the State presented overwhelming evidence of either actual or constructive possession.

¶ 19 We review the sufficiency of the evidence under the standard of *Jackson v. Virginia*, 443 U.S. 307 (1979), as adopted by *People v. Collins*, 106 Ill. 2d 237 (1985). When a reviewing court decides a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *Collins*, 106 Ill. 2d at 261 (quoting *Jackson*, 443 U.S. at 319). "Under this standard, a reviewing court must allow all reasonable inferences from the record in favor of the prosecution." *People v. Davison*, 233 Ill. 2d 30, 43 (2009).

¶ 20 "Under [the standard of *Jackson* and *Collins*], the reviewing court does not retry the defendant, and the trier of fact remains responsible for making determinations regarding the credibility of witnesses, the weight to be given their testimony, and the reasonable inferences to be drawn from the evidence. [Citation.] But merely because the trier of fact accepted certain testimony or made certain inferences based on the evidence does not guarantee the reasonableness of its decision. A conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory that there remains a reasonable doubt of [the] defendant's guilt." *People v. Ross*, 229 Ill. 2d 255, 272 (2008).

However, the State is not required to present evidence that excludes every reasonable hypothesis of the defendant's innocence. *E.g.*, *People v. Larson*, 379 Ill. App. 3d 642, 654 (2008).

¶ 21                                    B. Actual Possession

¶ 22    Possession of a prohibited item may be either actual or constructive. To show actual possession of contraband, the State must show that the contraband was "in the immediate and exclusive control of [the] defendant." See *People v. Frieberg*, 147 Ill. 2d 326, 360 (1992) (stating the rule for actual possession of a controlled substance). "Mere proximity is not sufficient evidence of actual possession." *People v. Schmalz*, 194 Ill. 2d 75, 81 (2000). Actual possession requires that the defendant exercise "present personal dominion" over the contraband; such possession exists when the defendant "exercises immediate and exclusive dominion or control" over the contraband. *Schmalz*, 194 Ill. 2d at 82. "Actual possession does not require present personal touching of the illicit material but, rather, present personal dominion over it." *Schmalz*, 194 Ill. 2d at 82.

¶ 23    The State may show actual possession through acts such as hiding or trying to dispose of the contraband. *E.g.*, *People v. Carodine*, 374 Ill. App. 3d 16, 25 (2007). In other words, a defendant exhibits present personal dominion by doing things that tend to determine the fate of the contraband.

¶ 24    The State argues that defendant's furtive movements permit an inference that he was in actual possession of the gun. It contends that it is fair to infer that, when defendant was moving in the car with his hands out of Butur's view, he was either removing the gun from his person or trying to push it out of sight in the seat pocket.

¶ 25    We agree with the State that the evidence adequately supports an inference that defendant placed the gun in the seat pocket and therefore was in actual possession of it.   Defendant could have placed the gun there at any time while he was in the car.

¶ 26    The jury was free to reject the inference that Davis, the driver, placed the gun in the seat pocket and simply left it there when he walked to the beach.   Butur found the gun in a place that was readily accessible to a passenger in the rear-right seat, where defendant was seated.   The relative lack of access makes it less likely that the driver or front passenger left the gun in the pocket.   The evidence did not physically exclude the possibility that Davis abandoned a fully loaded semiautomatic handgun with a round in the chamber and the safety off.   But although that scenario is possible, it is improbable; the State is not required to present evidence that excludes every reasonable hypothesis of a defendant's innocence.   *Larson*, 379 Ill. App. 3d at 654.

¶ 27    Defendant notes that Scott denied seeing defendant handle the gun and indeed even seeing the gun before the police seized it.   This, if true, would undermine the inference that he placed the gun in the seat pocket.   However, the jury could have reasonably concluded that Scott was not credible.   By her own account, she was intoxicated at the time, and her association with defendant created a motive for her to understate any observations that would tend to incriminate him.

¶ 28    The jury could reasonably infer from the undisputed evidence that the gun was found in the seat pocket in front of defendant because he placed it there.   To prove actual possession, the State was not required to show the "present personal touching" (*Schmalz*, 194 Ill. 2d at 82) of the gun by defendant, but merely his present personal dominion over it.   See *Schmalz*, 194 Ill. 2d at 82.   The jury could reasonably infer that defendant had present personal dominion over the gun because he had attempted to hide it.   See *Carodine*, 374 Ill. App. 3d at 25.

¶ 29                              C. Constructive Possession

¶ 30    The State's second theory of possession is that defendant's proximity to the gun supports an inference that he intended to control it, that is, that he constructively possessed it.   As discussed, the evidence supports a reasonable inference of defendant's actual possession of the weapon, and it also supports the State's theory of constructive possession.

¶ 31    The State argues that defendant had constructive possession because his presence in the back seat gave him "immediate and exclusive control" of the seat pocket where Butur found the gun.   To show constructive possession of contraband, the State must show that, although the defendant lacks "actual personal present dominion" over the contraband, he or she nevertheless has "an intent and capability to maintain control and dominion."   *Frieberg*, 147 Ill. 2d at 361. "Constructive possession may be proved by showing that the defendant had knowledge of the presence of the contraband and had immediate and exclusive control over the area where the contraband was found."   *People v. Love*, 404 Ill. App. 3d 784, 788 (2010).

¶ 32    Defendant concedes that a reasonable person could infer that he knew that a gun was in the car, but he asserts that the evidence did not establish that he constructively possessed it.   He also suggests that Davis was the person who actually exercised dominion over the gun.

¶ 33    In his reply brief, defendant further argues that his "furtive" movements have explanations other than possessing the gun, such as his adjusting his clothing.   He argues that mere proximity is not sufficient evidence of intent to exercise control over contraband, so that, without the evidence that the State seeks to draw from the "furtive" movements, the location of the gun does not support an inference that he intended to exert control over it.

¶ 34    Defendant argues finally that *People v. Wright*, 2013 IL App (1st) 111803 ¶ 26, compels reversal because more evidence is required to show constructive possession.   In *Wright*, the State alleged that the defendant " 'knowingly carried on or about his person, a firearm, at a time when

he was not on his own land or in his own abode or fixed place of business.' " *Wright*, 2013 IL App (1st) 111803, ¶ 5. The evidence showed that several police officers, executing a search warrant, entered a residence through an unlocked door. The defendant and another person, Quentin Mitchell, fled toward a flight of stairs to the basement. An officer saw Mitchell fall over defendant on the way down, and the two suspects came to rest next to each other near a wall. *Wright*, 2013 IL App (1st) 111803, ¶ 7. The officer "observed a handgun 'just to the left of' and 'within inches of Mitchell's left hand.' " *Wright*, 2013 IL App (1st) 111803, ¶ 7.

¶ 35    A second officer "announced there was another gun present." *Wright*, 2013 IL App (1st) 111803, ¶ 7. "The second gun was a 'Colt 45,' which was attributed to [the] defendant." *Wright*, 2013 IL App (1st) 111803, ¶ 7.

> "[The first officer] admitted that at no time did he see a weapon in [the] defendant's hands, nor did he see [the] defendant make any motion that would indicate or suggest that [the] defendant discarded a weapon. Besides Mitchell and [the] defendant, three other people were in the basement when the search warrant was executed. *Wright*, 2013 IL App (1st) 111803, ¶ 9.

¶ 36    A third officer testified that,

> " '[a]s [he] came down the steps, [he] saw a gun protruding from underneath the Defendant.' The gun was protruding from the 'center mass' or torso area of [the] defendant[, who was on his stomach]. *** The gun was 'inches' from [the] defendant's hands. [That officer] saw [another officer] step on [the] defendant's hand and yell out that there was a gun." *Wright*, 2013 IL App (1st) 111803, ¶ 10.

The third officer "clarified that although he saw the gun 'inches' from defendant's hand, he never actually saw the gun in [the] defendant's hand nor did he see [the] defendant make any motion suggesting that he was disposing of the gun." *Wright*, 2013 IL App (1st) 111803, ¶ 11.

¶ 37 On appeal, the Appellate Court, First District, held that the State "failed to prove beyond a reasonable doubt that [the] defendant knowingly possessed the gun that was attributed to him." *Wright*, 2013 IL App (1st) 111803, ¶ 26. The *Wright* court noted that, although two officers "testified the gun was found underneath [the] defendant, neither officer testified that [the] defendant made any movements to indicate knowledge of a weapon." *Wright*, 2013 IL App (1st) 111803, ¶ 26. The court concluded that the evidence failed to show that the defendant "exercised immediate and exclusive control over the basement area where the gun was found." *Wright*, 2013 IL App (1st) 111803, ¶ 26.

¶ 38 In *Wright*, unlike this case, the State confined its argument to constructive possession and did not argue that the defendant had actual possession of the gun. *Wright*, 2013 IL App (1st) 111803, ¶ 21. The *Wright* court emphasized that none of the officers saw the weapon in the defendant's hands or noticed him move in a way to indicate that he was discarding a gun. *Wright*, 2013 IL App (1st) 111803, ¶ 26. Such evidence relates to actual possession, but the *Wright* court cited its absence as grounds for reversing a finding of constructive possession.

¶ 39 In support of its holding, the *Wright* court also cited testimony that the defendant did not make any movements to indicate his knowledge that he was lying on the gun. *Wright*, 2013 IL App (1st) 111803, ¶ 26. Assuming the defendant in *Wright* did not know that the weapon was present, this case is factually distinguishable in that defendant concedes his awareness of the gun in the seat pocket. The defendant in *Wright* was part of a pile-up at the bottom of the stairs, near others who were in the basement where the gun was found. In contrast, defendant in this case had

immediate and exclusive control of the area around the seat pocket because he deliberately sat where he had such control. The jury could infer that, even if defendant lacked actual personal present dominion over the gun, he nevertheless had "an intent and capability to maintain control and dominion" over it because he knew of its presence and had immediate and exclusive control of the seat pocket where it was found. See *Frieberg*, 147 Ill. 2d at 361; *Love*, 404 Ill. App. 3d at 788.

¶ 40 When considering all the evidence in the light most favorable to the prosecution, we conclude that a rational trier of fact could have found beyond a reasonable doubt the essential elements of unlawful possession of a weapon by a felon. See *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004).

¶ 41                                    III. CONCLUSION

¶ 42 For the reasons stated, we affirm defendant's conviction of unlawful possession of a weapon by a felon.

¶ 43 Affirmed.